JAMES ROYALS, JR., AND CARL F. BENFIELD, CO-EXECUTORS OF THE ESTATE OF A.G. DRAUGHAN, DECEASED, PLAINTIFFS v. PIEDMONT ELECTRIC REPAIR COMPANY, A NORTH CAROLINA CORPORATION, ROBERT G. DRAUGHAN, SR., AND F.W. SHORT, DEFENDANTS v. NANCY A. DRAUGHAN, JAMES L. ROYALS, JR., ADMINISTRATOR OF THE ESTATE OF BETSY DRAUGHAN HACKLER, JUDY DRAUGHAN PHILLIPS, PEGGY DRAUGHAN HULIN, JAMES L. ROYALS, JR. (INDIVIDUALLY), ROBERT G. DRAUGHAN, JR., DAVID MICHAEL DRAUGHAN, AND STEVEN D. COE, THIRD-PARTY DEFENDANTS

No. COA99-609

(Filed 2 May 2000)

**1. Corporations— closely-held—minority shareholders' rights—reasonable expectation analysis—findings**

The trial court in a minority shareholder's rights case did not disregard the reasonableness and without-fault requirements of the reasonable expectations analysis where the bulk of the court's findings were geared to other parts of the test in

ROYALS v. PIEDMONT ELECTRIC REPAIR CO.

[137 N.C. App. 700 (2000)]

*Meiselman v. Meiselman*, 309 N.C. 279, but the court stated that the holders of 39% of the ownership interest had certain reasonable expectations which were set out.

2. **Corporations— closely-held—minority shareholders' rights—reasonable expectations—viewed over entire course of dealing—not limited to written instruments**

The trial court correctly found that a minority shareholder and director in a closely-held corporation had reasonable financial and management expectations. A complaining shareholder's reasonable expectations cannot be viewed in a vacuum, but must be examined and re-evaluated over the entire course of the various participants' relationships and dealings and are not limited to those memorialized in written instruments.

3. **Corporations— closely-held—minority shareholder's rights—reasonable expectations—frustration—faulty conduct of shareholder—causal connection**

The reasonable expectations of complaining shareholders in a closely-held corporation were frustrated where the corporation refused to offer fair market value for the shares of one shareholder and systematically excluded from all involvement one of the directors. Although the company contended that any frustration of expectations came as a result of the shareholder's sexual harassment, there was no causal connection between the faulty behavior and the frustration of the complaining shareholder's expectations and no causal connection between the shareholder's conduct and the exclusion of the director from management decisions.

4. **Corporations— closely-held—protection of expectations of minority shareholders—dissolution**

The trial court did not err by ordering dissolution of a closely-held corporation where that was the only way to safeguard the expectations of the complaining shareholders. The majority shareholders can prevent dissolution if they opt to purchase the shares of the complaining shareholders at the fair value determined by an independent appraiser.

5. **Corporations— closely-held—costs of appraiser's report— wholly taxed to defendants—court's discretion**

The trial court did not abuse its discretion by taxing the entire cost of an independent appraiser's report to defendants in

an action brought by minority shareholders in a closely-held corporation. Although a pre-trial case management order stated that appraisal costs would be shared by both parties, that order specifically stated that the court could amend any of its provisions when appropriate.

Appeal by defendants from order and judgment entered 3 March 1999 by Judge Ben F. Tennille in Guilford County Superior Court. Heard in the Court of Appeals 23 February 2000.

*Wyatt, Early, Harris & Wheeler, L.L.P., by William E. Wheeler, for plaintiff-appellees.*

*Keziah, Gates & Samet, L.L.P., by Jan H. Samet, for defendant-appellant Piedmont Electric Repair Company.*

*Roberson, Haworth & Reese, PLLC, by Robert A. Brinson, for defendant-appellant Robert G. Draughan, Sr.*

*Fisher, Clinard & Craig, PLLC, by Rick Cornwell, for defendant-appellant F.W. Short.*

LEWIS, Judge.

Since 1955, North Carolina has served as a pioneer and "shining light" in the protection of minority shareholder rights. Robert Savage McLean, Note, *Minority Shareholders' Rights in the Close Corporation under the New North Carolina Business Corporation Act,* 68 N.C.L. Rev. 1109, 1125-26 (1990) (citing a quote by Professor F. Hodge O'Neal that appeared in the *Charlotte Observer* on May 20, 1989). In this appeal, we are asked to re-affirm that tradition of protection by upholding the dissolution of a closely-held corporation, nearly forty percent (40%) of whose shares have basically been frozen by the controlling shareholders.

Defendant Piedmont Electric Repair Company ("PERCO") is a closely-held corporation engaged in the business of electrical contracting work. Defendant Robert G. Draughan ("Buck") is PERCO's president and owns fifty-one percent (51%) of the company's shares. Defendant F.W. Short ("Short") is the executive vice-president, treasurer, and owner of one share of PERCO stock. A.G. Draughan ("Glenn"), father of Buck, owned thirty-eight percent (38%) of PERCO's shares when he died in 1996. All his shares are currently in a testamentary trust that he established for the benefit of his wife for life and then his four daughters. Plaintiffs serve as trustees of this

trust. The third-party defendants own the remaining eleven percent (11%) of PERCO's stock.

Glenn began working for PERCO in 1938 and gradually worked his way up the management ranks within the company. During his tenure, he held positions as vice-president, president, and chairman of the board of PERCO. As of 1992, he, Buck, and Short were PERCO's three directors, as well as the company's only stockholders. Beginning in 1992, however, Glenn's standing in the company began to deteriorate when allegations of sexual harassment were lodged against him. PERCO hired independent counsel to investigate these allegations. Counsel's report concluded that Glenn had committed various acts of sexual harassment. Upon advice of counsel, PERCO thereafter banned Glenn from the company's premises and limited his job duties to only that of a "consultant" at the rate of $15,000 per year.

Upon learning of this, Glenn attempted to sell his shares of stock. Just as Dan Short (Glenn's former partner and Short's father) had previously done, Glenn wanted to sell his shares in order to fund his retirement. But pursuant to a shareholder restriction agreement, the company and all other shareholders had a right of first refusal on any attempted sale of stock. Accordingly, Glenn offered to sell his shares to either PERCO, Buck, or Short for 120% of the company's book value. Buck and Short, both individually and on behalf of the company, turned down the offer.

At a 10 February 1994 shareholder's meeting, Buck and Short were re-elected as PERCO directors; plaintiff James Royals, Jr. ("Royals"), Glenn's grandson, was elected as the third director. However, at a directors' meeting that afternoon, Buck and Short elected themselves as the two-member executive committee that would run PERCO. That same day, PERCO offered to purchase Glenn's shares for just under half of the company's book value, an offer that was never accepted by Glenn. The following day, PERCO sent Glenn a letter terminating him as vice-president and company consultant and informing him he would no longer receive any compensation from the company. Even though Glenn remained a thirty-eight percent (38%) shareholder in PERCO and Royals remained one of the company's directors, Buck and Short have conducted all of PERCO's business since 1994 without consulting either of them.

In 1997, Royals attempted to enter PERCO's premises with an environmental engineer to investigate some environmental concerns

Glenn had expressed to him before his death. Following this attempt, PERCO banned Royals and all other minority shareholders from its premises. Plaintiffs thereafter filed this action seeking judicial dissolution of PERCO under N.C. Gen. Stat. § 55-14-30(2)(ii). From a judgment and order granting plaintiffs' requested relief, defendants appeal.

Section 55-14-30(2)(ii) provides for judicial dissolution of a corporation when "liquidation is reasonably necessary for the protection of the rights or interests of the complaining shareholder." If such grounds exist, the decision to dissolve the corporation is within the trial court's sound discretion. *Foster v. Foster Farms, Inc.*, 112 N.C. App. 700, 706, 436 S.E.2d 843, 847 (1993). We conclude that the requisite grounds exist and that the trial court did not abuse its discretion in ordering dissolution.

The seminal case with respect to judicial dissolution of closely-held corporations pursuant to N.C. Gen. Stat. § 55-14-30(2)(ii) (formerly section 55-125(a)(4)) is *Meiselman v. Meiselman*, 309 N.C. 279, 307 S.E.2d 551 (1983). In *Meiselman*, our Supreme Court outlined the particular dilemma that minority shareholders in closely-held corporations often face. Specifically, that court stated:

> [M]any close corporations are companies based on personal relationships that give rise to certain "reasonable expectations" on the part of those acquiring an interest in the close corporation. . . .
>
> Thus, when personal relations among the participants in a close corporation break down, the "reasonable expectations" the participants had . . . become difficult if not impossible to fulfill. In other words, when the personal relationships among the participants break down, the majority shareholder, because of his greater voting power, is in a position to terminate the minority shareholder's employment and to exclude him from participation in management decisions.

*Id.* at 289-90, 307 S.E.2d at 558. Furthermore, "the illiquidity of a minority shareholder's interest in a close corporation renders him vulnerable to [other] exploitation by the majority shareholders." *Id.* at 291, 307 S.E.2d at 559. Given these concerns, our Supreme Court announced that consideration of the "rights or interests" of the complaining shareholder under the statute requires analyzing that shareholder's "reasonable expectations." *Id.* at 298, 307 S.E.2d at 563. If

those expectations are being frustrated, a court may then consider fashioning appropriate relief to protect those interests, including ordering dissolution. *Id.* at 300, 307 S.E.2d at 563.

Specifically, *Meiselman* outlines a four-step requirement for relief under the reasonable expectations analysis. First, the complaining shareholder must prove he had one or more substantial reasonable expectations that were known or assumed by the other shareholders. *Id.* at 301, 307 S.E.2d at 564. Examples of such expectations might include ongoing participation in the management of the company or secure employment with the company. *Id.* at 290, 307 S.E.2d at 558. Second, he must demonstrate that the expectation or expectations have been frustrated. *Id.* at 301, 307 S.E.2d at 564. Next, the complaining shareholder must show that this frustration of expectations was not the product of his own fault and was largely beyond his control. *Id.* Finally, he must show that the specific circumstances warrant some form of equitable relief. *Id.*

[1] At the outset, defendants contend that the trial court ignored two of these four requirements. Specifically, they argue that the trial court focused on what expectations the complaining shareholders had, but never specifically determined whether these expectations were reasonable. Moreover, they argue that the trial court never specifically concluded that any frustration of these expectations was not the fault of the complaining shareholders. We find these arguments unpersuasive. The trial court specifically determined:

34. The holders of the 385 shares of stock in PERCO, representing approximately 39% of the ownership interest therein originally owned by A.G. Draughan, and after his death held by Plaintiffs as executors of his estate, as well as [certain third-party defendants], had certain *reasonable* expectations, which are set forth below. These *reasonable* expectations, which were known or assumed to exist by Defendants, have been frustrated *without the fault of the complaining minority shareholders.*

(Emphasis added). Defendants are correct in pointing out that the bulk of the trial court's findings are geared towards the other two parts of the *Meiselman* test. But Finding No. 34 sufficiently demonstrates that the trial court did not wholly disregard the reasonableness and without-fault requirements. We now consider whether the trial court properly applied all four parts.

**[2]** As stated, the first part of the *Meiselman* test requires an analysis of the complaining minority shareholders' reasonable expectations. The trial court concluded that the various minority shareholders here had six such expectations. These can fairly be subdivided into two categories, financial expectations and management expectations. Each category will be analyzed below.

With respect to the shareholders' financial expectations, the trial court found the following: (1) all minority shareholders would have a reasonable opportunity to realize some return on their equity, either in the form of distribution of PERCO's profits or purchase of their shares at fair market value; and (2) Glenn would be able to redeem his shares in order to fund his retirement and/or his estate plan. Defendants contest these findings by pointing out that, at no time in PERCO's history, had a shareholder ever received fair market value for his shares. As was the case with Short's father, Dan Short, the shares had always been purchased at below market value and then subsidized by additional annual compensation from the company. Based upon this history, defendants maintain the trial court erred by concluding that Glenn and the other minority shareholders had an expectation of receiving fair market return on their equity. We disagree.

Significantly, *Meiselman* states that a complaining shareholder's reasonable expectations cannot be viewed in a vacuum; rather they must be examined and re-evaluated over the entire course of the various participants' relationships and dealings. *Meiselman*, 309 N.C. at 298, 307 S.E.2d at 563. Furthermore, these expectations are not limited to those memorialized in the by-laws or other written instruments; "[they] must be gleaned from the parties' *actions* as well as their signed agreements." 2 F. Hodge O'Neal & Robert B. Thompson, *O'Neal's Close Corporations* § 9.30 (3d ed. 1998) (emphasis added).

Here, all along, Glenn had a reasonable expectation of receiving some sort of fair value for his shares of stock. There is little doubt that Buck and Short both knew of, and concurred in, this expectation. *See Meiselman*, 309 N.C. at 298, 307 S.E.2d at 563 ("In order for plaintiff's expectations to be reasonable, they must be known to or assumed by the other shareholders and concurred in by them.") Although Glenn's initial expectation with respect to fair value might have been less than book value linked with a subsidized annual compensation or consulting fee, this expectation changed following the 10 February 1994 director's meeting, at which time PERCO cut off

**ROYALS v. PIEDMONT ELECTRIC REPAIR CO.**

[137 N.C. App. 700 (2000)]

Glenn's compensation altogether. Following this meeting, defendants cannot claim that the parties had the same expectations as before. Once informed that he would no longer receive any compensation from PERCO, Glenn could only reasonably expect that fair value return for his shares now meant his shares would be purchased at market value. Thus, the trial court correctly concluded that Glenn had a reasonable expectation in receiving fair market value for his shares.

However, Glenn is not the only complaining shareholder whose expectations need to be considered. On the management side, the trial court concluded that Royals, as one of PERCO's directors, reasonably expected to have a voice in any business decisions and access to all corporate records. This finding is supported by the evidence. His election to PERCO's board of directors by Buck and Short inherently created an expectation that he would be involved in management decisions and have access to corporate records. Accordingly, we also conclude that the trial court properly found that Royals had a reasonable expectation in participating in the management of the company.

[3] Having concluded that the complaining shareholders had substantial reasonable expectations here, we now proceed to the second step in the *Meiselman* inquiry and determine whether these expectations have been frustrated by the corporation. There is no question that frustration of expectations has occurred here. On the financial expectations side, PERCO has refused to offer fair market value for Glenn's shares (or any other minority shareholder's shares for that matter). In fact, PERCO essentially continues to hold these shares captive, forcing the minority shareholders to either redeem them for significantly less than market value or hold on to them until the majority shareholders decide to dissolve the company. On the management expectations side, Royals has been systematically excluded from all involvement whatsoever in PERCO, notwithstanding that he is one of its directors. And when he did try to exercise some management of the company by bringing in an environmental engineer to investigate certain environmental concerns, PERCO responded by permanently banning him from the premises.

Next, we consider whether the frustration of these expectations occurred without the fault of the complaining shareholders. This part of the *Meiselman* test has not to date been developed by our courts. Defendants contend that any frustration of expectations came as the direct result of Glenn's own sexual harassment activities and that, by

cutting off his compensation, banning him from the premises, and terminating him as an officer, PERCO was merely looking out for its best interests. We disagree.

By including a fault-based inquiry within the reasonable expectations analysis, *Meiselman* essentially requires a court to ask whether the complaining shareholder's own conduct was the cause behind the frustration. Thus, in order for fault to be a bar to dissolution, there must be some causal connection between the frustration of the shareholder's reasonable expectations and his faulty behavior. For example, a shareholder with an expectation in management cannot seek dissolution based upon a frustration of this expectation if he never learns the business nor attends corporate management meetings. Likewise, a shareholder with an expectation in secure employment would be barred from seeking dissolution if he embezzled money from the company. *Compare Pooley v. Mankato Iron & Metal, Inc.*, 513 N.W.2d 834 (Minn. Ct. App. 1994) (upholding trial court's conclusion that the complaining shareholder's expectations had been frustrated, notwithstanding his history of assaults and consequent termination) *with Exadaktilos v. Cinnaminson Realty Co.*, 400 A.2d 554 (N.J. Super. Ct. Law Div. 1979) (barring dissolution because frustration of the complaining shareholder's expectation of participation in management was caused by his own unsatisfactory managerial performance), *aff'd per curiam*, 414 A.2d 994 (N.J. Super. Ct. App. Div. 1980).

We conclude that there was no causal connection between the frustration of the complaining shareholders' expectations and Glenn's faulty behavior here. Although Glenn's conduct did warrant some penalty with respect to his presence and participation in management at PERCO, for purposes of this analysis, any penalty should not have extended to his realization of a fair return on his equity in the company. Glenn's compensation was never tied to any real services he was performing for PERCO at that time. Rather, it was only part of the parties' original arrangement to help fund Glenn's retirement and/or estate plan in return for a below-market buyout of his shares. Any conduct by Glenn should have in no way affected this wholly separate arrangement. Furthermore, there was certainly no causal connection between Glenn's conduct and PERCO's systematic exclusion of Royals from management decisions. This exclusion instead manifests an intent by Buck and Short to control the company without any minority shareholder or director input. Accordingly, we conclude that frustration of the complaining share-

holders' reasonable expectations did not result from any fault on their part.

**[4]** The last step in the *Meiselman* test requires us to consider whether dissolution or some other relief is appropriate under the circumstances. As previously stated, this analysis is addressed to the sound discretion of the trial court. *Foster*, 112 N.C. App. at 706, 436 S.E.2d at 847. We find no abuse of discretion. The evidence strongly suggests that the minority shareholders have been permanently frozen out of the company, fiscally and physically. Glenn's shares are currently in a testamentary trust for the benefit of his aging widow. The only way these shares will ever produce any money for her is if they are liquidated. But PERCO, in the persons of Buck and Short, has demonstrated no interest in offering a fair return for these shares. Furthermore, PERCO has manifested no desire to involve Royals in any management decisions whatsoever. Under these circumstances, we conclude that judicial dissolution is the only way to safeguard the expectations of the complaining shareholders here.

We do note that the majority shareholders can still prevent dissolution if they opt to purchase the 385 shares held by the complaining shareholders. Our statutes specifically provide:

> In any proceeding brought by a shareholder under G.S. 55-14-30(2)(ii) in which the court determines that dissolution would be appropriate, the court shall not order dissolution if, after such determination, the corporation elects to purchase the shares of the complaining shareholder at their fair value, as determined in accordance with such procedures as the court may provide.

N.C. Gen. Stat. § 55-14-31(d) (1999). After considering an independent appraiser's report of PERCO's value, the trial court found the fair value of each share to be $635. Defendants have not contested this finding in their brief. Accordingly, defendants can prevent dissolution by purchasing the complaining shareholders' stock for $635 per share.

**[5]** In their final assignment of error, defendants claim the trial court improperly taxed them the entire cost of the independent appraiser's valuation report. We disagree. N.C. Gen. Stat. § 7A-305(d)(7) specifically allows appraisal costs to be assessed against a party. The trial court then has discretion whether or not in fact to award these costs. N.C. Gen. Stat. § 6-20 (1999). Its decision is not reviewable absent an

abuse of that discretion. *Brandenburg Land Co. v. Champion International*, 107 N.C. App. 102, 103, 418 S.E.2d 526, 527 (1992). We find no abuse here.

Defendants claim that the trial court abused its discretion by ignoring the court's pre-trial case management order, in which the court stated that appraisal costs would be shared by both parties. But that order also specifically stated the court could amend any of its provisions when appropriate. The court did so in its final judgment, when it ordered only defendants to pay the appraisal costs. By doing that which it was specifically empowered to do, i.e., change the terms of the case management order, the trial court cannot be said to have abused its discretion. Accordingly, defendants' final assignment of error is without merit.

Affirmed.

Judges JOHN and EDMUNDS concur.