IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1034

Filed: 1 September 2015

Wake County, No. 12 CVS 11108

WILLIAM H. HARRIS, JR., Plaintiff,

v.

TESTAR, INC., TESTAR ENGINEERING, P.C., GARY L. WILLIAMS, DAVID G.
BRINTLE, and HERBERT T. DIXON, JR., Defendants.

Appeal by plaintiff from order entered on 25 March 2014 by Judge Donald W.
Stephens in Superior Court, Wake County. Heard in the Court of Appeals on 5 March
2015.

> *Law Office of Matthew I. Van Horn, PLLC, by Matthew I. Van Horn, for
> plaintiff-appellant.*
>
> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Charles F.
> Marshall and Eric M. David, for defendant-appellees.*

STROUD, Judge.

William H. Harris, Jr. ("plaintiff") appeals from an order in which the trial
court (1) granted a motion for summary judgment by Testar, Inc., Testar Engineering,
P.C., Gary L. Williams, David G. Brintle, and Herbert T. Dixon, Jr. (collectively,
"defendants") as to all of plaintiff's claims; and (2) granted defendants' motion for
summary judgment as to their counterclaims for fraud and breach of fiduciary duty.
We affirm.

## I.    Background

In 1998, plaintiff, Williams, Brintle, and Dixon formed Testar, Inc.  Each of the four men served on its Board of Directors and worked as employees.  Testar provides air emissions testing services for clients in the municipal waste industry.  To provide these services, Testar employees travel to various industrial facilities throughout the eastern United States and transport and handle hazardous materials.

In October 2003, plaintiff, Williams, Brintle, and Dixon executed a Stockholders' Agreement.  Each of the four men owned 1,000 shares of stock.   Section 4(i) of the Stockholders' Agreement provides that

> the employment of a Stockholder may only be terminated for good cause, and based on a breach of fiduciary duty of a Stockholder to [Testar] and the other Stockholders, or on some intentional or grossly negligent action taken by said Stockholder which puts [Testar] or the other Stockholders at substantial risk of civil or criminal penalties or sanctions.

Section 4(c) provides that upon termination, a stockholder must immediately sell all of his stock to Testar.  Section 4(f) further provides that the purchase price per share of stock is $1.00 and that this price may only be changed by the unanimous agreement of the Stockholders.  Section 4(g) also provides that "[e]ach Stockholder . . . agrees to waive any and all claims against [Testar] or the other Stockholders for any value of Stock except as provided herein."  Section 15 provides that the agreement "contains the entire understanding among the parties[,]" and section 20 provides that the

agreement "shall not be modified or amended except by unanimous written agreement of the Stockholders."

On 6 January 2007, plaintiff's son, Barrett Harris, was charged with driving by person less than 21 years after consuming alcohol or drugs and simple possession of a Schedule VI substance. *See* N.C. Gen. Stat. §§ 20-138.3, 90-95(d)(4) (2007). The trial court dismissed the charges. On 15 June 2007, plaintiff and Barrett were charged with maintaining a place for using, keeping, or selling a controlled substance and simple possession of marijuana. *See id.* §§ 90-95(d)(4), -108(a)(7) (2007). Barrett was also charged with possession of drug paraphernalia. S*ee id.* § 90-113.22 (2007). Both plaintiff and Barrett were convicted of simple possession of marijuana, and Barrett was also convicted of possession of drug paraphernalia.

In 2007, plaintiff, Williams, Brintle, and Dixon learned that the U.S. Department of Transportation ("DOT") required Testar to perform annual driving record checks for all employees. In August 2009, upon plaintiff's recommendation, Barrett began working for Testar. In September 2009, plaintiff, Williams, Brintle, and Dixon learned that DOT regulations also required Testar to have a security plan, to provide Testar employees with Hazardous Materials ("HAZMAT") training, and to perform criminal background checks on all employees. Dixon thus requested that plaintiff run criminal and driving record checks on all HAZMAT employees, which included plaintiff and Barrett. In September 2009, plaintiff stored all of these records

in sealed envelopes to conceal his and Barrett's criminal and driving history. Plaintiff also intentionally kept an incomplete record of Barrett's criminal history. Plaintiff told Dixon that he had run the criminal background checks and that no employee had ever been arrested.

On 10 July 2010, plaintiff was charged with driving while impaired ("DWI"), and his driver's license was revoked for thirty days. *See id.* §§ 20-16.5, -138.1 (2009). Despite the revocation, from 18 July 2010 to 24 July 2010, during a Testar business trip, plaintiff rented a car.

In May 2012, Williams, Brintle, and Dixon discovered plaintiff's and Barrett's June 2007 criminal charges and plaintiff's July 2010 DWI. On 29 May 2012, Williams, Brintle, and Dixon held a meeting in which they voted to remove plaintiff from Testar because of plaintiff's concealment of his and Barrett's criminal and driving records. Williams, Brintle, and Dixon then hired a locksmith to change the locks to Testar's office.

On 8 June 2012, plaintiff again was charged with DWI and his driver's license was revoked for thirty days. *See id.* §§ 20-16.5, -138.1 (2011). Plaintiff was also charged with transporting an open container of alcohol. *See id.* § 20-138.7(a)(1) (2011).

On or about 3 August 2012, plaintiff sued Williams, Brintle, Dixon, and Testar for oppression as to his shares of stock, among other claims, and alleged that they

had wrongfully terminated him. Plaintiff also sought a preliminary injunction. On 7 September 2012, the trial court denied plaintiff's claim for a preliminary injunction but ordered Testar to place plaintiff on administrative leave until 29 October 2012. On 31 October 2012, Williams, Brintle, and Dixon held a meeting and decided to terminate plaintiff's employment because of plaintiff's concealment of his and Barrett's criminal and driving records.

On 5 November 2012, Williams, Brintle, Dixon, and Testar moved to dismiss, answered, and counterclaimed for fraud and breach of fiduciary duty, among other counterclaims. Williams, Brintle, and Dixon formed Testar Engineering, P.C., and on 18 June 2013, plaintiff amended his complaint and added Testar Engineering, P.C. as a defendant. On 27 January 2014, defendants moved for summary judgment, and on 28 February 2014, plaintiff moved for summary judgment.

On 25 March 2014, the trial court (1) granted defendants' motion for summary judgment as to all of plaintiff's claims, thereby dismissing all of plaintiff's claims; (2) granted defendants' motion for summary judgment as to their counterclaims for fraud and breach of fiduciary duty; and (3) granted plaintiff's motion for summary judgment as to defendants' remaining counterclaims, thereby dismissing those counterclaims. In its order, the trial court acknowledged that the parties disputed whether plaintiff resigned or was terminated at the 29 May 2012 meeting. The trial court construed the facts in the light most favorable to plaintiff and assumed that plaintiff did not

resign but was terminated at the 29 May 2012 meeting. The trial court awarded defendants $1 in nominal damages and released to plaintiff $1,000, which had been deposited by defendants with the trial court, in exchange for plaintiff's 1,000 shares in Testar, thereby terminating plaintiff's interest in Testar. On 24 April 2014, plaintiff timely filed a notice of appeal.[1]

## II. Standard of Review

We review a trial court's summary judgment order *de novo* and view the evidence in the light most favorable to the non-movant. *Erthal v. May*, 223 N.C. App. 373, 377, 736 S.E.2d 514, 517 (2012), *appeal dismissed and disc. review denied*, 366 N.C. 421, 736 S.E.2d 761 (2013). We engage in a two-part analysis of whether:

> (1) the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) the moving party is entitled to judgment as a matter of law.
> Summary judgment is appropriate if: (1) the non-moving party does not have a factual basis for each essential element of its claim; (2) the facts are not disputed and only a question of law remains; or (3) if the non-moving party is unable to overcome an affirmative defense offered by the moving party.

---

[1] Defendants argue that plaintiff did not appeal the portion of the order which granted summary judgment in favor of defendants as to their counterclaims for fraud and breach of fiduciary duty. But in his notice of appeal, plaintiff appealed the entire order except the portion in which the trial court granted summary judgment in favor of *plaintiff* as to defendants' remaining counterclaims. We therefore hold that plaintiff has properly appealed the portions of the order that plaintiff has argued on appeal, in which the trial court entered summary judgment against him.

*Id.* at 378, 736 S.E.2d at 517 (citations and quotation marks omitted).

### III.    Motion for Summary Judgment

Plaintiff argues that the trial court erred in (1) granting defendants' motion for summary judgment as to all of plaintiff's claims; and (2) granting defendants' motion for summary judgment as to their counterclaim for breach of fiduciary duty.

### A.    Plaintiff's Removal From Testar

Plaintiff first contends that there is a genuine issue of material fact as to (1) whether Testar terminated plaintiff; and (2) if Testar did terminate plaintiff, the basis for that termination. Although there is a factual dispute as to whether plaintiff resigned or was terminated at the 29 May 2012 meeting, the trial court resolved this factual dispute in plaintiff's favor. In his complaint, plaintiff alleged that Testar wrongfully terminated him. Additionally, in his deposition, plaintiff stated that, at the 29 May 2012 meeting, he was "forced" to leave. In his deposition, plaintiff also stated that, at the 31 October 2012 meeting, Testar terminated him. Accordingly, we hold that the trial court properly resolved this factual dispute in plaintiff's favor by assuming that Testar terminated plaintiff. *See id.* at 377, 736 S.E.2d at 517. We additionally hold that there is no genuine issue of material fact as to the basis for plaintiff's termination, because defendants proffered uncontroverted evidence that Testar terminated plaintiff because of plaintiff's concealment of his and Barrett's criminal and driving history. In addition, because of the nature of Testar's business

and the need for compliance with DOT HAZMAT rules, plaintiff's concealment of his and his son's criminal and driving records created a potential threat to Testar's ability to continue to operate its business.

B.      Breach of Fiduciary Duty

Plaintiff next contends that the trial court erred in concluding that he breached his fiduciary duty to Testar.  A director of a corporation owes that corporation a duty of loyalty.  *See* N.C. Gen. Stat. § 55-8-30(a)(3) (2013).  In the context of a fiduciary relationship, "there is a duty to disclose all material facts[.]"  *See Vail v. Vail*, 233 N.C. 109, 114, 63 S.E.2d 202, 206 (1951); *Sidden v. Mailman*, 150 N.C. App. 373, 376, 563 S.E.2d 55, 58 (2002) ("A duty to disclose arises where a fiduciary relationship exists between the parties to a transaction." (quotation marks and brackets omitted)), *cert. denied*, 356 N.C. 678, 577 S.E.2d 888 (2003).

As a director, plaintiff owed Testar a fiduciary duty.  *See* N.C. Gen. Stat. § 55-8-30(a)(3).  There is no dispute that after his fellow directors entrusted plaintiff to run complete and accurate criminal and driving record checks, plaintiff intentionally concealed his June 2007 and July 2010 criminal charges, which included a DWI charge, and Barrett's January 2007 and June 2007 criminal charges, which included a charge of driving by person less than 21 years after consuming alcohol or drugs. *See id.* §§ 20-138.1, -138.3.  Plaintiff's concealment constitutes a failure to disclose material facts, especially in light of Testar's business of transporting hazardous

materials and DOT's requirement that it maintain accurate criminal and driving records of all HAZMAT employees, which included plaintiff and Barrett. Additionally, we note that defendants proffered uncontroverted evidence that plaintiff affirmatively stated that no employee had ever been arrested. Accordingly, we hold that plaintiff breached a fiduciary duty to Testar. *See Vail*, 233 N.C. at 114, 63 S.E.2d at 206; *Sidden*, 150 N.C. App. at 376, 563 S.E.2d at 58.

C.    Reasonable Expectations of Minority Shareholder

Plaintiff finally contends that the trial court erred in failing to protect his "reasonable expectations" as a complaining shareholder, in contravention of *Meiselman v. Meiselman*, 309 N.C. 279, 301, 307 S.E.2d 551, 564 (1983), and N.C. Gen. Stat. §§ 55-14-30(2)(ii), -14-31(d) (2013). For plaintiff to obtain relief under a "reasonable expectations" analysis, he must prove that (1) he had one or more substantial reasonable expectations known or assumed by the other participants; (2) the expectation has been frustrated; (3) the frustration was without fault of plaintiff and was in large part beyond his control; and (4) under all of the circumstances of the case, plaintiff is entitled to some form of equitable relief. *Meiselman*, 309 N.C. at 301, 307 S.E.2d at 564.

> In order for plaintiff's expectations to be reasonable, they must be known to or assumed by the other shareholders and concurred in by them. Privately held expectations which are not made known to the other participants are not "reasonable." Only expectations embodied in understandings, express or implied, among the

participants should be recognized by the court.

*Id.* at 298, 307 S.E.2d at 563.  However,

> a complaining shareholder's reasonable expectations cannot be viewed in a vacuum; rather they must be examined and re-evaluated over the entire course of the various participants' relationships and dealings. Furthermore, these expectations are not limited to those memorialized in the by-laws or other written instruments; they must be gleaned from the parties' actions as well as their signed agreements.

*Royals v. Piedmont Electric Repair Co.*, 137 N.C. App. 700, 706, 529 S.E.2d 515, 519

(citation, quotation marks, and brackets omitted), *disc. review denied*, 352 N.C. 357,

544 S.E.2d 548 (2000).

Here, section 4(i) of the Stockholders' Agreement provides that

> the employment of a Stockholder may only be terminated for good cause, and based on a breach of fiduciary duty of a Stockholder to [Testar] and the other Stockholders, or on some intentional or grossly negligent action taken by said Stockholder which puts [Testar] or the other Stockholders at substantial risk of civil or criminal penalties or sanctions.

Section 4(c) provides that upon termination, a stockholder must immediately sell all

of his stock to Testar.  Section 4(f) further provides that the purchase price per share

of stock is $1.00.  Because we hold that plaintiff breached a fiduciary duty to Testar,

we hold that Testar lawfully terminated plaintiff under section 4(i), which triggered

plaintiff's duty to sell his 1,000 shares to Testar at $1.00 per share under sections 4(c)

and 4(f).  We thus hold that the trial court adequately protected his "reasonable

expectations" as a complaining shareholder by awarding him $1,000 in exchange for his 1,000 shares in Testar.

Relying on *Royals*, plaintiff argues that the Stockholders' Agreement does not contain all of his reasonable expectations. *Royals*, 137 N.C. App. at 706, 529 S.E.2d at 519. But plaintiff fails to articulate any expectations beyond this agreement. In his deposition, plaintiff admitted that the Stockholders' Agreement "is the document that sets forth [his] rights, responsibilities, and expectations as a shareholder[.]" Additionally, on appeal, plaintiff admits that under this agreement, he had "reasonable expectations that [he] . . . would *not* receive a fair value if [he] breached a fiduciary duty." (Emphasis added). Moreover, we note that section 4(g) of the agreement provides that "[e]ach Stockholder . . . agrees to waive any and all claims against [Testar] or the other Stockholders for any value of Stock except as provided herein." Additionally, section 15 of the agreement provides that the agreement "contains the entire understanding among the parties[,]" and section 20 provides that the agreement "shall not be modified or amended except by unanimous written agreement of the Stockholders." Accordingly, we distinguish *Royals* and hold that the trial court adequately protected plaintiff's "reasonable expectations" by applying the Stockholders' Agreement.

IV.    Conclusion

For the foregoing reasons, we hold that the trial court did not err in (1) granting defendants' motion for summary judgment as to all of plaintiff's claims; and (2) granting defendants' motion for summary judgment as to their counterclaim for breach of fiduciary duty. Accordingly, we affirm the trial court's order.

AFFIRMED.

Judges DILLON and INMAN concur.