Brewster v. Powell Bail Bonding, Inc., 2016 NCBC 41.

STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
                                       SUPERIOR COURT DIVISION
COUNTY OF NEW HANOVER                16 CVS 274

| | |
|---|---|
| RAUL S. BREWSTER, ) | |
|        Plaintiff, ) | |
| ) | |
| v. ) | **FINAL ORDER ON MOTION FOR** |
| ) | **PRELIMINARY INJUNCTION** |
| POWELL BAIL BONDING, INC., LARRY ) | |
| JACK POWELL, JOHN E. LEONARD, JR., ) | |
| and CYNTHIA LEE, ) | |
|        Defendants. ) | |

THIS MATTER comes before the Court on Plaintiff Raul S. Brewster's ("Plaintiff") Motion for Preliminary Injunction ("Motion"). On March 9, 2016, the Court held a hearing on the Motion.[1]

THE COURT, having considered the Motion, briefs in support of and opposition to the Motion, arguments of counsel, and other appropriate matters of record, FINDS and CONCLUDES as follows.

FACTUAL AND PROCEDURAL BACKGROUND

1. Plaintiff Raul S. Brewster ("Plaintiff") is a shareholder and former employee of Defendant Powell Bail Bonding ("PBB"). Defendants Larry Jack Powell ("Powell"), John E. Leonard, Jr. ("Leonard"), and Cynthia Lee ("Lee") are all shareholders of PBB ("Defendant Shareholders"). PBB has other shareholders who are not named in this action, but Plaintiff alleges that those shareholders are not employed by PBB, nor do they exercise any control over PBB.[2] PBB is a North Carolina corporation engaged in the bail bonding business in

---

[1] As noted in the Court's Order entered on March 11, 2016, the Court held the Motion in abeyance to allow the parties an opportunity to participate in an early mediation. The Court now addresses the merits of the Motion.

[2] *See* Am. Compl. ¶¶ 8-9, 12-13, 16-17. On April 6, 2016, after the hearing on the Motion, Plaintiff filed his Amended Verified Complaint, to which the Court cites in this Order. For the purposes of the Motion, the Court treats Plaintiff's Amended Verified Complaint as an affidavit.

"multiple counties in North Carolina (primarily New Hanover County) and in one locality in the State of South Carolina."[3]

2.      Plaintiff began working with PBB as a bail bondsman in December 1997. Plaintiff initially worked as a recovery agent, tasked with finding and arresting defendants who skipped bail.[4] During the course of his employment with PBB, Plaintiff's responsibilities and efforts to grow PBB's business increased.[5] In or around December 2005, Powell offered and Plaintiff accepted a 20% equity interest in PBB.[6]  Plaintiff also was elected as a director and appointed as a "2nd Vice President."[7] Plaintiff alleges that at the time he became a shareholder, "he was already virtually exclusively managing all operations and business development for" PBB.[8] Additionally, Plaintiff alleges that he continued to expend substantial efforts and labor to grow PBB's business after becoming an owner, and that "[n]o other owner was performing the quantity or scope of labor and services" on behalf of PBB as Plaintiff.[9]

3.      On December 22, 2005, Plaintiff and Leonard executed an Agency Agreement with Accredited Surety & Casualty Company, Inc. ("Agency Agreement"), pursuant to which he became authorized to execute bail bonds as an agent of Accredited.[10] Under the Agency Agreement, Plaintiff and Leonard became personally liable for bonds previously written by PBB and for future bonds written by PBB's associate bondsmen.[11]

---

[3] Am. Compl. ¶ 19.
[4] *Id.* at ¶ 29.
[5] *See id.* at ¶ 31.
[6] *Id.* ¶¶ 32-34.
[7] *Id.* at ¶ 37.
[8] Am. Compl. ¶ 35.
[9] *See id.* at ¶¶ 46-47.
[10] *Id.*, Ex. A.
[11] *Id.* at ¶¶ 41-42.

4. Despite his efforts on behalf of PBB, Plaintiff alleges that he was "systematically excluded" from PBB's financial matters, including financial decision-making and planning, and that information regarding PBB's finances was withheld by the Defendant Shareholders.[12] Beginning in 2012 or 2013, Plaintiff repeatedly requested that he be included in these financial matters, but no efforts were ever taken by Defendant Shareholders to increase Plaintiff's involvement in the financial management of PBB.[13] Plaintiff also alleges that the Defendant Shareholders limited his authority in the general management of PBB, and excluded him from "all management discussions and conferences" and that he "was never invited to participate in meetings regarding the direction or management of [ ] PBB."[14]

5. In September 2015, Plaintiff provided Defendant Shareholders with a letter summarizing Plaintiff's frustrations with his treatment as an owner of PBB.[15] The letter also stated, in pertinent part, as follows:

> I, Raul S. Brewster, have to take control of my own future and destiny. At this time you don't have to change anything. I want to step down and begin my own path. We can decide, as partners, how to proceed from here. I can stay on the payroll, or you can buy me out, whatever is best for you and the company.[16]

6. In response to the letter, on September 11, 2015, PBB placed Plaintiff on paid leave and terminated his authority to write any additional bonds for PBB.[17] A letter provided to Plaintiff also stated that, "concerning your future employment and minority interest in the corporation, we hope to find a long-term agreement as quickly as possible."[18] Plaintiff subsequently communicated to PBB that he had not intended to resign his employment, and

---

[12] *Id.* at ¶¶ 49, 52, and 56.
[13] Am. Compl. ¶ 52.
[14] *See id.* at ¶ 57.
[15] *Id.* ¶¶ 65-67, Ex. B.
[16] *Id.*, Ex. B.
[17] *Id.* ¶ 68, Ex. C.
[18] *Id.*

Plaintiff maintains that he did not quit nor consent to the termination of his employment with PBB.[19] Nevertheless, on September 25, 2015, PBB terminated Plaintiff's employment.[20]

7. On October 7, 2015, Defendant Shareholders convened a special shareholders' meeting. Plaintiff objected to the meeting, but attended and again asserted that he had not resigned his employment.[21] At the meeting, the shareholders elected Powell, Leonard, and Lee as directors and adopted new corporate bylaws for PBB. Plaintiff abstained from these votes.[22] In November, 2015, the directors and shareholders voted on an approved a Minority Shareholder Buy-Sell Agreement. Plaintiff voted against the Buy-Sell Agreement.[23] Plaintiff contends that the new bylaws and the Minority Shareholder Buy-Sell Agreement each contain provisions that are "unreasonably encumber [Plaintiff's] rights as an owner" of PBB, and frustrate his reasonable expectation of continued involvement in PBB as a shareholder and an employee.[24]

8. Plaintiff contends that as a result of, his "wrongful termination," he has not received any distributions, dividends, salary, benefits, or any other form of compensation.[25] Defendants contend that they have attempted to purchase Plaintiff's interest in PBB, but have been unable to reach agreement to do so.[26] Defendants also contend that PBB has purchased a new insurance policy that excludes Plaintiff from liability for new bonds written by PBB, and that the shareholders have offered to indemnify Plaintiff from liability for bonds

---

[19] *Id.* at ¶ 72.
[20] Leonard Aff. ¶ 5.
[21] Am. Compl. 74, Ex. D; Leonard Aff. ¶ 10.
[22] *Id.* ¶ 75
[23] *Id.* ¶ 77.
[24] Am. Compl. ¶¶ 78-89.
[25] *See* Pl.'s Br. Supp. Mot. Prelim. Inj. pp. 2-3.
[26] Leonard Aff. ¶ 12.

written prior to his termination "upon sale or purchase of [Plaintiff's] share in the Corporation."[27]

9. On January 25, 2016, Plaintiff filed his Verified Complaint, and on April 6, 2016, he filed an Amended Verified Complaint. Plaintiff raises the following causes of action: Motion for Preliminary Injunction – Reinstatement of Plaintiff ("Claim One"); Alternative Motion for Preliminary Injunction – Prohibitory Against Defendant Shareholders ("Claim Two"); Judicial Dissolution or Other Relief Necessary to Protect Plaintiff's Rights ("Claim Three"); Breach of Fiduciary Duty ("Claim Four"); and Civil Conspiracy ("Claim Five").[28]

10. On March 3, 2016, Plaintiff filed a brief in support of the Motion. Aside from the Verified Complaint, Plaintiff did not file any additional evidentiary materials in support of the Motion. On March 7, 2016, Defendants filed a response to the Motion, as well as the Affidavit of John E. Leonard, Jr.

11. As noted above, on March 9, 2016, the Court held a hearing on the Motion and, following that hearing, held the Motion in abeyance pending the parties' completion of an expedited mediation. The Court now addresses the Motion on its merits.

## DISCUSSION

12. A preliminary injunction may be issued during litigation when "it appears by affidavit that a party thereto is doing or threatens or is about to do . . . some act . . . in violation of the rights of another party to the litigation respecting the subject of the action, and tending to render judgment ineffectual." N.C. Gen. Stat. § 1-485(2) (hereinafter "G.S."). A preliminary injunction is an extraordinary measure that "will not be lightly granted." *Travenol Labs., Inc. v. Turner*, 30 N.C. App. 686, 692, 228 S.E.2d 478, 483 (1976) (citation omitted). The primary relief requested by Plaintiff, and the only relief for which he argues in his brief in support, is

---

[27] *Id.* at ¶ 17.
[28] Plaintiff's original Complaint also contained a demand for corporate records.

a mandatory injunction that would reinstate Plaintiff to his alleged right to "participate in the operations and profits of PBB,"[29] and reinstate Plaintiff to employment with PBB. "Mandatory injunctions are disfavored as an interlocutory remedy . . . . [h]owever, . . . under circumstances which indicate serious irreparable injury to the petitioner if the injunction is not granted, no substantial injury to the respondent if the injunction is granted, and predictably good chances of success on the final decree by the petitioner[,] a mandatory interlocutory injunction could properly be issued." *Roberts v. Madison Cty. Realtors Ass'n, Inc.*, 344 N.C. 394, 400, 474 S.E.2d 783, 787-88 (1996) (citation omitted).

13. The movant bears the burden of establishing the right to a preliminary injunction. *Pruitt v. Williams*, 288 N.C. 368, 372, 218 S.E.2d 348, 351 (1975). In order to secure preliminary injunctive relief from the Court, a movant must show "a likelihood of success on the merits of his case and . . . [that the movant] is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of his rights during the course of litigation." *Analog Devices, Inc. v. Michalski*, 157 N.C. App. 462, 466, 579 S.E.2d 449, 452 (2003) (citations omitted); *accord Looney v. Wilson*, 97 N.C. App. 304, 307-08, 388 S.E.2d 142, 144-45 (1990). Likelihood of success means a "reasonable likelihood." *A.E.P. Indus., Inc. v. McClure*, 308 N.C. 393, 404, 302 S.E.2d. 754, 761 (1983). In addition, the Court must balance the equities, and a preliminary injunction "should not be granted where there is a serious question as to the right of the defendant to engage in the activity and to forbid the defendant to do so, pending final determination of the matter, would cause the defendant greater damage than the plaintiff would sustain from the continuance of the activity while the litigation is pending." *Id.*; *County of Johnston v. City of Wilson*, 136 N.C. App 775, 780, 525 S.E.2d 826, 829 (2000) (Court should weigh "the

---

[29] Pl.'s Br. Supp. Mot. Prelim. Inj. pp. 5-6.

advantages and disadvantages to the parties" in deciding whether to issue a preliminary injunction). The issuance of an injunction is "a matter of discretion to be exercised by the hearing judge after a careful balancing of the equities." *State v. Fayetteville St. Christian School*, 299 N.C. 351, 357, 261 S.E.2d 908, 913 (1980).

    a.  <u>Likelihood of Success</u>.

14.    Plaintiff's argument focuses exclusively on his claims for judicial dissolution of PBB pursuant to G.S. § 55-14-30. G.S. § 55-14-30(2) permits a superior court to dissolve a corporation if, *inter alia*, a shareholder establishes that "liquidation is reasonably necessary for the protection of the rights or interests of the complaining shareholder."[30] The seminal North Carolina case analyzing judicial dissolution of closely held corporations for the protection of shareholder rights and interests is *Meiselman v. Meiselman*. 309 N.C. 279, 307 S.E.2d 551 (1983).[31] The *Meiselman* court held that dissolution under this prong may be appropriate if the court finds that the shareholder's "reasonable expectations"—that is, those held in good faith by the complaining shareholder and "embodied in understandings" among the other shareholders—have been violated, such that some sort of liquidation need be granted to protect those interests. *Id.* at 298-300, 307 S.E.2d at 562-63. In determining whether dissolution is appropriate under G.S. § 55-14-30(2)(ii), a court must (1) identify the "rights or interests" that the complaining shareholder had in the corporation, including the shareholder's "reasonable expectations," (2) determine that these expectations have been frustrated without fault of the shareholder, and (3) evaluate whether the shareholder is entitled to some type of equitable relief under these circumstances. *Foster v. Foster Farms,*

---

[30] G.S. § 55-14-30(2)(ii); The statute provides additional grounds for dissolution, none of which are applicable in this case.

[31] Though *Meiselman* was decided under the predecessor statute, G.S. § 55-14-30(2)(ii) is identical to the provision in the *Meiselman* statute. *Foster*, 112 N.C. App. at 709.

112 N.C. App. 700, 709 (1993); *Royals v. Piedmont Elect. Repair Co.*, 137 N.C. App. 700, 705, 529 S.E.2d 515, 518 (2000).

15. Plaintiff argues that as a minority shareholder of PBB he had certain "reasonable expectations" regarding, and rights to, continued involvement in the "operations and profits" of PBB.[32] Plaintiff also contends that he had an expectation of continued "employment, salaries, benefits, etc. that arose out of his ownership of PBB."[33] Plaintiff alleges that the Defendant Shareholders "have always known of [Plaintiff's] reasonable expectations" and "have acted in conformity with [Plaintiff's] expectations."[34]

16. The Court is skeptical at this stage of the action, and based on the record evidence currently before it, that Plaintiff has shown a likelihood of success on the grounds that his rights and interests in the profits of PBB have been frustrated. Defendants have presented evidence that Plaintiff has not been excluded from participation in PBB's profits and that he will receive his share of the profits if profits are distributed.[35]

17. Plaintiff has not specified in what manner he has had an expectation of participating in PBB's' "operations" have been frustrated. Plaintiff concedes that he never participated PBB's financial and management decisions, and has not explained how his expectations in this regard have been frustrated. The facts establish that Plaintiff has continued to be involved as a PBB shareholder, has participated in the shareholders meetings PBB has held since his termination, and has had opportunity to vote on matters considered by the shareholders.

---

[32] Plaintiff relies on this contention most obviously in his claim for judicial dissolution, but it also underlies his claims for breach of fiduciary duty and civil conspiracy. *See* Am. Compl. ¶¶ 111-114, 117, 121-124.
[33] Pl.'s Br. Supp. Mot. Prelim. Inj. p. 6.
[34] Am. Compl. ¶ 98.
[35] Leonard Aff. ¶¶ 10, 14.

18.     Plaintiff's contention that he had a reasonable expectation of continued employment, however, comes closer to the mark.  An expectation of continued employment may constitute an interest that will be protected through dissolution.  *Royals,* 137 N.C. App. at 705, 529 S.E.2d at 518 (recognizing that a shareholder's "substantial reasonable expectations" can include "secure employment with the company"); *High Point Bank & Trust Co.,* 2010 NCBC LEXIS 14, at **21 (noting that ownership interests can include "the opportunity to work or compensation and fringe benefits"). Plaintiff alleges that his "skill, value, and performance as an employee" led to the offer of an ownership interest.[36] Defendant Shareholders Leonard and Lee also were made owners based on their employment with PBB.[37] Plaintiff participated in an unusual compensation scheme in which he received monthly "distributions" of approximately $8,500.00 for salary and payments for the costs of his personal vehicle, health and dental insurance, and home utility and office expenses.[38] This same compensation scheme apparently was applied to the Defendant Shareholders who were employed with PBB.[39] Plaintiff alleges that the Defendant Shareholders knew of and understood his continued expectation in the unique compensation system. These facts support Plaintiff's contention that he had a reasonable expectation of continued employment. On the other hand, the evidence also supports the conclusion that Plaintiff's expectation of continued employment was frustrated, at least partly, through his own fault since he admittedly notified Defendants that he wanted to "step down and begin [his] own path." *High Point Bank & Trust Co. v. Sapona Mfg. Co.,* 2010 NCBC LEXIS 14, **29-30 (N.C. Super. Ct. June 22, 2010)( To warrant dissolution under "the complaining shareholder must show that

---

[36] Am. Compl. ¶ 32.
[37] *Id.* at ¶¶ 37-38.
[38] *Id.* at ¶ 88.
[39] Leonard, Aff. ¶ 7, Ex. A.

this frustration of expectations was not the product of his own fault and was largely beyond his control.").

b. Irreparable Harm.

19. Even if, however, the Court were to conclude that Plaintiff has sufficiently shown a likelihood of success, Plaintiff has failed to show that he will suffer irreparable harm in the absence of an injunction. Plaintiff argues that he will be subject to two "discrete" types of irreparable harm:

> First, [Plaintiff] is and continues to be personally liable for any forfeitures of bail bonds written by PBB under the agreement with [Accredited]. Second, because of the unique nature of bail bonding business and [Plaintiff's] exclusive experience therein, the defendants' termination of [Plaintiff's] employment and benefits pursuant to his ownership of PBB created a *de facto* proscription on his ability to obtain gainful employment or financially sustain himself.[40]

20. As to potential liability on outstanding bonds for which he remains responsible, Defendant has purchased new insurance that relieves Plaintiff of liability for bonds written following his termination. More significantly, Plaintiff has not presented evidence that PBB is not taking all reasonable measures to ensure the effectiveness of its bail recovery operations, or that any failure to recover bonds for which he could be liable is imminent or even likely. Plaintiff does not allege that PBB has forfeited any bonds since his termination. Instead, record evidence suggests that PBB's recovery operations have not faltered since Plaintiff's employment was terminated.[41] Additionally, other PBB shareholders also are subject to personal liability on the bonds and have a strong incentive to ensure the continued success of recovery operations.[42] Absent any evidence to the contrary, Plaintiff's argument that he might be subject to liability if operations falter does not present the threat of "real

---

[40] Pl.'s Br. Supp. Mot. Prelim. Inj. p. 7.
[41] Leonard Aff. (Mar. 7, 2016) ¶ 16.
[42] *Id.*

and immediate" injury necessary to obtain a preliminary injunction. *A.E.P. Indus., Inc. v. McClure*, 308 N.C. 393, 414, 302 S.E.2d 754, 767 (1983).

21.     Plaintiff's contention that he is unable to obtain other employment and, consequently, will suffer financial distress also fails to establish irreparable harm. First, North Carolina courts have long noted that, "[w]here there is a full, complete and adequate remedy at law, the equitable remedy of injunction will not lie." *Bd. of Light & Water Comm'rs of City of Concord v. Parkwood Sanitary Dist.*, 49 N.C. App. 421, 423, 271 S.E.2d 402, 404 (1980). If he ultimately prevails, Plaintiff has a full remedy for any financial injury in the form of monetary damages. Indeed, our court of appeals has expressly held that a temporary loss of income caused by an allegedly improper termination of employment does not constitute irreparable harm. *Williams v. Greene*, 36 N.C. App. 80, 86, 243 S.E.2d 156, 160 (1978). Accordingly, any loss of income tied to Defendants' alleged conduct is inherently not irreparable.

22.     As to the alleged "de facto proscription" on Plaintiff being able to find another position in the bail bond industry, such proscription appears to be self-imposed. Plaintiff does not contend, and has not presented any evidence, that there are no positions available in the bail bond industry for which he is qualified. Plaintiff does not contend that he has applied for but been unable to secure such a position, or that any Defendant has taken any action to prevent his employment elsewhere. Instead, Plaintiff apparently has decided not to apply for work in the bail bond industry because he does not want to "engage in a business that competes directly with PBB, which necessarily reduces the value of his ownership interest in PBB."[43] Setting aside its concerns with the logic of Plaintiff's argument, the Court concludes that Plaintiff's voluntary decision not to seek alternative employment, and thus mitigate his

---

[43] Pl.'s Br. Supp. Mot. Prelim. Inj. p. 9.

alleged financial losses, cannot support a conclusion that those financial losses constitute irreparable harm.

23.     As a final consideration, the Court also notes that the equities presented by the Motion weigh against the entry of the requested injunctive relief. Even if the harm suggested by Plaintiff was sufficient to grant the Motion, the injunctive relief sought is disproportionately burdensome to Defendants. It appears to the Court that entering the mandatory injunction reinstating Plaintiff to his former role with PBB would be disruptive and detrimental to the ongoing operations of PBB, particularly where Plaintiff has expressed his desire to leave and begin his own path.[44] Moreover, Plaintiff's alternative request would bar Defendant Shareholders from drawing a salary during the pendency of this litigation. In the absence of allegations or evidence that PBB is unable to afford those salaries, is otherwise in financial distress, or some other compelling justification, the Court believes such relief is not necessary at this preliminary stage.

24.     Ultimately, for the reasons above, the Court concludes, in its discretion, that the Motion should be DENIED.

THEREFORE, IT IS ORDERED that Plaintiff's Motion for Preliminary Injunction is DENIED.

This the 24th day of May, 2016.


 /s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
  for Complex Business Cases

---

[44] *See* Am. Compl., Ex. B.