HIGH POINT BANK AND TRUST COMPANY, AS EXECUTOR OF THE ESTATE OF ELIZABETH M. SIMMONS, PLAINTIFF V. SAPONA MANUFACTURING COMPANY, INC., ACME-McCRARY CORPORATION, RANDOLPH OIL COMPANY, C.W. McCRARY, JR., C. WALKER McCRARY, III, W.H. REDDING, JR. A/K/A WILLIAM H. REDDING, JR., S. STEELE REDDING, JOHN O.H. TOLEDANO, JOHN O.H. TOLEDANO, JR., ROBERT C. SHAFFNER, BRUCE T. PATRAM, JOHNNY R. KNOWLES A/K/A JOHNNY R. KNOWLES, SR., DEAN F. LAIL, VIRGINIA R. WEILER, JAMES W. BROWN JR., DONNIE R. WHITE A/K/A DONALD R. WHITE, DIANE L. DONAHUE, LARRY K. SMALL, LARRY D. ELMORE AND M. GIL FRYE A/K/A MICHAEL G. FRYE, DEFENDANTS

No. COA10-1369

(Filed 17 May 2011)

**Corporations— dissolution—request for purchase of shares at fair market value—reasonable expectation analysis**

The trial court did not err by granting summary judgment in favor of defendant corporations on plaintiff's claims requesting dissolution of the corporations, or alternatively, that the corporations purchase decedent's shares at fair market value. Decedent did not possess an enforceable right or interest based upon a reasonable expectation shared by all shareholders that her ownership in the corporations would be redeemed at fair market value upon her death.

Appeal by plaintiff from order and opinion entered 22 June 2010 by Judge Ben F. Tennille in Randolph County Superior Court. Heard in the Court of Appeals 22 March 2011.

*Roberson Haworth & Reese, P.L.L.C., by Robert A. Brinson, Thomas F. Foster, and Christopher C. Finan, for plaintiff-appellant.*

*Ellis & Winters, LLP, by J. Donald Cowan, Jr., and Schell Bray Aycock Abel & Livingston, P.L.L.C., by Doris R. Bray, for defendants-appellees.*

HUNTER, Robert C., Judge.

High Point Bank and Trust Company ("plaintiff"), as executor of the estate of Elizabeth M. Simmons ("Mrs. Simmons"), appeals from the trial court's order and opinion granting Sapona Manufacturing Company ("Sapona"), Acme-McCrary Corporation ("Acme"), and Randolph Oil Company's ("Randolph") (collectively "the defendant

.

corporations" or "defendants") motion for summary judgment.[1] The trial court determined that no material issue of fact exists and that plaintiff's claim that defendants were required to purchase Mrs. Simmons' shares in the defendant corporations after her death was unreasonable as a matter of law. After careful review, we affirm.

## Background

Sapona, Acme, and Randolph are closely held corporations that are managed and controlled by the same, or substantially the same, individuals. Each corporation has its principal place of business in Randolph County, North Carolina. Sapona, which was founded in the 1800's, was purchased in 1916 by D.B. McCrary, T.H. Redding, and W.J. Armfield, Jr. Sapona produces and supplies natural and synthetic yarn, including textured nylon and covered spandex. The corporation has approximately 200 employees and 51 shareholders. Acme, which has approximately 892 employees and 81 shareholders, was formed by D.B. McCrary and T.H. Redding in 1909. The corporation manufacturers hosiery and seamless apparel and is supplied with yarn-based products from Sapona. Acme and Sapona also share health insurance, accounting, and personnel services. Randolph was founded in 1934 by C.W. McCrary, Sr., the son of D.B. McCrary. Randolph has approximately 49 employees and 25 shareholders and is in the business of selling fuel oil, gasoline, and LP gas at wholesale prices to various retailers and convenience stores.

Mrs. Simmons is the daughter of C.W. McCrary, Sr. and the granddaughter of D.B. McCrary. She inherited her shares in the defendant corporations from her parents. At the time of her death in 2004, Mrs. Simmons owned approximately 15% of Sapona (20,590 shares), 11% of Acme (14,449 shares), and 9% of Randolph (815 shares). At the time this action was initiated, plaintiff held these shares in trust for the benefit of Mrs. Simmons' estate. It does not appear that there is a market for these shares or any of the shares held by a minority shareholder.

After Mrs. Simmons' death, plaintiff sent letters to defendants requesting that they redeem the shares that were held in trust at fair market value. Sapona and Acme responded, stating: "At this time our company is not redeeming shares or buying back stock. It has been many years since we have redeemed shares; and at this time, we have no plans to change our position." Randolph offered to redeem its

---

1. The members of the Board of Directors of each corporation are also named defendants in this action.

shares for $60.00 per share.[2] The record indicates that other individual shareholders from all three corporations made offers to purchase the shares; however, plaintiff did not accept those offers because it deemed them to be below fair market value.[3]

On 8 April 2008, plaintiff filed a complaint requesting dissolution of the defendant corporations or, alternatively, that defendants purchase Mrs. Simmons' shares at fair market value. Plaintiff alleged that defendants' refusal to purchase the shares contravened Mrs. Simmons' reasonable expectation that her shares would be purchased after her death. Plaintiff contemporaneously filed a Notice of Designation of Action as Mandatory Complex Business Case. On 28 April 2008, this matter was designated a mandatory complex business case by order of the Chief Justice of the North Carolina Supreme Court and later assigned to Chief Special Superior Court Judge Ben F. Tenille.

After extensive discovery, all parties moved for summary judgment. On 22 June 2010, the trial court issued an order and opinion, granting defendants' motion for summary judgment and denying plaintiff's motion for summary judgment. The trial court reasoned that "the pertinent and material facts are undisputed" and that "Mrs. Simmons did not possess an enforceable right or interest based upon a *reasonable* expectation (shared by *all* shareholders) that her ownership in the Defendant Corporations would be redeemed at fair [market] value upon her death." Plaintiff timely appealed to this Court.

Standard of Review

"The standard of review on appeal [from] summary judgment is whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. The question is whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a genuine issue as to any material fact." *Sellers v. Morton*, 191 N.C. App. 75, 81, 661 S.E.2d 915, 920-21 (2008) (internal citations and quo-

2. As revealed in discovery, Randolph was serving as a conduit for another shareholder to purchase those shares. Randolph has never offered to purchase shares for its own account.

3. Plaintiff hired George B. Hawkins ("Mr. Hawkins") of Barrister Financial, Inc. to conduct an independent appraisal of the fair market value of the shares held by plaintiff in trust. Mr. Hawkins determined that the Acme shares had a fair market value of $23.97 per share (a total of $346,343.00 for 14,449 shares); the Sapona shares had a fair market value of $149.37 per share (a total of $3,129,302.00 for 20,590 shares); and the Randolph shares had a fair market value of $137.90 per share (a total of $112,389.00 for 815 shares).

tation marks omitted). "The burden is upon the moving party to show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *McGuire v. Draughon*, 170 N.C. App. 422, 424, 612 S.E.2d 428, 430 (2005) (internal citation omitted). Plaintiff must "produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial." *Collingwood v. General Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). "All facts asserted by the [nonmoving] party are taken as true and their inferences must be viewed in the light most favorable to that party." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000) (internal citations omitted). On appeal, this Court reviews an order granting summary judgment *de novo*. *McCutchen v. McCutchen*, 360 N.C. 280, 285, 624 S.E.2d 620, 625 (2006).

## Discussion

Plaintiff argues that there are genuine issues of material fact and defendants are, therefore, not entitled to judgment as a matter of law. Alternatively, plaintiff argues that summary judgment should have been entered in its favor because the facts establish that Mrs. Simmons had a reasonable expectation that defendants would purchase her shares after her death.

Plaintiff devotes a significant portion of its brief to arguing that the trial court improperly weighed the evidence in its extensive findings of fact, which signifies that material issues of fact exist, and, therefore, this case should not have been decided at summary judgment. Upon review of the entire order, it is clear that the trial court considered the undisputed facts and determined as a matter of law that Mrs. Simmons did not have a reasonable expectation that her shares would be purchased after her death. Although the trial court made some inferences based on these facts, the trial court clearly set out that "[t]he pertinent and material facts are undisputed." *See Capps v. City of Raleigh*, 35 N.C. App. 290, 292, 241 S.E.2d 527, 529 (1978) ("Granted, in rare situations it can be helpful for the trial court to set out the *undisputed* facts which form the basis for [its] judgment. When that appears helpful or necessary, the court should let the judgment show that the facts set out therein are the undisputed facts."). The inferences drawn by the trial court demonstrate the trial court's application of the undisputed facts to the essential legal analysis. Moreover, this Court reviews summary judgment *de novo*, *McCutchen*, 360 N.C. at 285, 624 S.E.2d at 625; therefore, regardless of the trial court's findings of fact, it is the task of this Court to determine anew whether there are material issues of fact that would pre-

clude entry of summary judgment for defendants. We hold that there is not a genuine issue of material fact in this case. We now address whether the undisputed facts support the trial court's entry of summary judgment in favor of defendants.

Plaintiff in this case seeks a dissolution of the defendant corporations pursuant to N.C. Gen. Stat. § 55-14-30(2)(ii) (2009) (emphasis added), which states that "[t]he superior court may dissolve a corporation . . . [i]n a proceeding by a shareholder if it is established that . . . liquidation is reasonably necessary *for the protection of the rights or interests of the complaining shareholder*[.]" However, N.C. Gen. Stat. § 55-14-31(d) (2009) mandates that if the trial court determines that dissolution is appropriate, "the court shall not order dissolution if . . . the corporation elects to purchase the shares of the complaining shareholder at their fair value, as determined in accordance with such procedures as the court may provide." Accordingly, the trial court must first establish if dissolution is reasonably necessary. *Id.* If dissolution is deemed to be necessary, then the corporations may avoid dissolution by purchasing the shares at issue. *Id.*

"[B]efore it can be determined whether, in any given case, it has been established that liquidation is reasonably necessary to protect the complaining shareholder's rights or interest[s], the particular rights or interests of the complaining shareholder must be articulated." *Meiselman v. Meiselman,* 309 N.C. 279, 298, 307 S.E.2d 551, 562 (1983) (internal quotation marks omitted). The complaining shareholder has the burden of establishing that his or her rights or interests are being contravened. *Id.* at 297, 307 S.E.2d at 562. The *Meiselman* Court set forth the following "expectations analysis" to ascertain whether liquidation of the corporation is reasonably necessary to protect the rights of the complaining shareholder:

> For plaintiff to obtain relief under the expectations[] analysis, he must prove that (1) he had one or more substantial reasonable expectations known or assumed by the other participants; (2) the expectation has been frustrated; (3) the frustration was without fault of plaintiff and was in large part beyond his control; and (4) under all of the circumstances of the case plaintiff is entitled to some form of equitable relief.

*Id.* at 301, 307 S.E.2d at 564. In determining the first prong of the *Meiselman* test, the Supreme Court provided some guidance:

> [A] complaining shareholder's rights or interests in a close corporation include the reasonable expectations the complaining

shareholder has in the corporation. These reasonable expectations are to be ascertained by examining the entire history of the participants' relationship. That history will include the reasonable expectations created at the inception of the participants' relationship; those reasonable expectations as altered over time; and the reasonable expectations which develop as the participants engage in a course of dealing in conducting the affairs of the corporation. The interests and views of the other participants must be considered in determining reasonable expectations. *The key is reasonable. In order for plaintiff's expectations to be reasonable, they must be known to or assumed by the other shareholders and concurred in by them. Privately held expectations which are not made known to the other participants are not reasonable.* Only expectations embodied in understandings, express or implied, among the participants should be recognized by the court.

*Id.* at 298, 307 S.E.2d at 563 (emphasis added) (internal quotation marks omitted).

Consequently, plaintiff in the case at bar must show that Mrs. Simmons had more than a privately held expectation that her shares would be purchased after her death at fair market value by defendants. Mrs. Simmons' expectation "must be known to or assumed by the other shareholders and concurred in by them." *Id.* The trial court aptly stated:

Plaintiff asserts a right to tender the shares of Mrs. Simmons owned in each of the Defendant Corporations. If such a right exists, it needs protection because the Defendant Corporations have refused to purchase the shares that Mrs. Simmons owned. Thus, the central question is whether a buyout at fair [market] value is an enforceable right or interest under *Meiselman.*

The trial court decided this matter exclusively on the first prong of the *Meiselman* test and determined that the undisputed facts establish that Mrs. Simmons' expectation was not reasonable as a matter of law, and, therefore, plaintiff does not currently have an enforceable right of redemption on behalf of Mrs. Simmons' estate.[4] We agree.

---

4. Defendants in this case argued before the trial court that *Meiselman* should only apply to corporations with 10 shareholders or less. The trial court engaged in a thorough analysis concerning the applicability of the *Meiselman* test to the facts of this case. The trial court acknowledged that "[n]one of the underlying factors which drove

The undisputed facts that plaintiff relies on to establish that Mrs. Simmons' expectation was reasonable are: (1) Acme and Sapona previously purchased the shares of a deceased shareholder, Thomas Redding ("Mr. Redding"); (2) in 1997, Acme and Sapona made a tender offer to all shareholders giving them the opportunity to sell some of their shares back to the defendant corporations; (3) Sapona made the same tender offer again in 2000; and (4) Mrs. Simmons wanted the proceeds of the purchased shares to benefit her adult son, Bo, and she expressed her belief to the trust officer in charge of her estate planning, Ms. Elizabeth Allen ("Ms. Allen"), that selling her shares after her death for that purpose "wouldn't be a problem."

In 1997 Mr. Redding, who was an employee, officer, and director of Acme, died at the age of 40. After examining their respective financial conditions, Acme and Sapona offered to purchase Mr. Redding's shares that were held in trust.[5] There is no evidence that the Redding family expected the shares to be redeemed; rather, it appears from the record that the offer was made due to Mr. Redding's age, longstanding employment, and the fact that he left behind a family with young children. This purchase was the only time that a deceased shareholder's shares were purchased by Acme and Sapona after the shareholder's death. This isolated event does not create a precedent that would give rise to a reasonable expectation amongst the shareholders, including Mrs. Simmons, that upon a shareholder's death, Acme and Sapona will purchase the deceased shareholder's shares.

In 1997, soon after the death of Mr. Redding, Acme and Sapona gave its shareholders an opportunity to sell their shares to the corpo-

---

the decision in *Meiselman* are clearly found in this case." Most notably, *Meiselman* and its progeny involved a small number of shareholders where antagonistic relationships and dominance by a controlling majority shareholder are more likely to occur than in a corporation where there are many shareholders and the corporation is run in a manner similar to that of a publicly held corporation. *See, e.g., Meiselman*, 309 N.C. at 282, 307 S.E.2d at 554 (involving two shareholders); *Lowder v. All Star Mills, Inc.*, 75 N.C. App. 233, 235-36, 330 S.E.2d 649, 651-52 (1985) (involving four shareholders in one corporation and five shareholders in another corporation); *Foster v. Foster Farms, Inc.*, 112 N.C. App. 700, 702, 436 S.E.2d 843, 845 (1993) (involving two shareholders). Additionally, as the trial court pointed out, the "number, composition, and rights and interests of the non-complaining shareholders" are important considerations when contemplating dissolution. For example, the effect of dissolution on the remaining shareholders will undoubtedly be different in a corporation with many shareholders versus a corporation with only a few shareholders. The trial court determined that "it is conceivable that *Meiselman* could apply to a business with more than a handful of shareholders." Consequently, while *Meiselman* is distinguishable, the trial court applied the test to the present case.

5. Randolph did not purchase any shares from Mr. Redding's estate.

rations. The letters from both corporations stated that "[b]ecause there is no market for the Company's stock, the Company's Board of Directors believes it appropriate that shareholders be given the opportunity to liquidate their investment from time to time."[6] In 2000, using the same rationale as stated in the 1997 letters, Sapona once again gave its shareholders the opportunity to redeem their shares in the corporation. Plaintiff claims that since all shareholders received the 1997 and 2000 letters, they were all under the same assumption that Acme and Sapona were willing to redeem their shares since there is no market for them. Plaintiff's argument is without merit. The letters do not support plaintiff's claim that a shareholder can expect that her shares will be purchased after her death at fair market value. To the contrary, the letters establish a precedent that the corporation will "from time to time" offer to purchase shares up to a certain amount and at a specified price. Moreover, the letters make no reference to estates or deceased shareholders and make no promises to purchase shares at any other time except when this type of limited offer is made.

As to Mrs. Simmons' statement to Ms. Allen that redeeming her shares after her death "wouldn't be a problem," we fail to see how this statement demonstrates anything other than her privately held expectation that defendants would redeem her shares. Mrs. Simmons did not provide any additional information to Ms. Allen that would indicate that any other shareholder was aware of her expectation. Ms. Allen testified that plaintiff has no information that any officer, director, or shareholder of any of the defendant corporations knew that Mrs. Simmons expected the corporations to purchase her shares after her death. In other words, there is no evidence that Mrs. Simmons ever relayed her subjective expectation to any member of the defendant corporations. Moreover, Mrs. Simmons never inquired as to the circumstances under which her shares would be purchased as she engaged in her estate planning.

Plaintiff cites *Royals v. Piedmont Electric Repair Co.*, 137 N.C. App. 700, 529 S.E.2d 515 (2000), and argues that, like the plaintiff in *Royals*, Mrs. Simmons had a reasonable expectation of receiving fair market value for her shares. This case does not support plaintiff's argument. In *Royals*, the deceased plaintiff had been actively involved in the corporation and had a reasonable expectation that he would receive "some sort of fair value for his shares." *Id.* at 706, 529 S.E.2d at 519. This expectation was known and concurred in by the

---

6. Randolph did not send a letter to its shareholders offering to purchase their shares.

other shareholders. *Id.* The plaintiff originally expected the redemption to occur at a bargain price supplemented by a subsidized compensation at retirement; however, when the arrangement was modified to eliminate the compensation component, the parties' expectations changed and the plaintiff had a reasonable expectation that his shares would be redeemed at fair market value. *Id.* at 706-07, 529 S.E.2d at 519. In the present case, there is no evidence that Mrs. Simmons' expectation was known, shared, or concurred in by any other shareholder. No other shareholder testified in this matter that he or she had the same expectation as Mrs. Simmons that his or her shares would be purchased after death. Moreover, the undisputed evidence shows that Mrs. Simmons, unlike the plaintiff in *Royals*, was never involved in the day-to-day operations of any of the defendant corporations and it does not appear that she attended the regular shareholder meetings or attempted to take an active role in the management of the defendant corporations.

In sum, while the undisputed facts may demonstrate a subjective expectation in the mind of Mrs. Simmons that her shares would be purchased from her estate after her death, they do not establish that the expectation was known or assumed by the other shareholders and concurred in by them. *Meiselman*, 309 N.C. at 298, 307 S.E.2d at 563. Consequently, the expectation is not reasonable and does not satisfy the first prong of the *Meiselman* test.[7]

### Conclusion

In sum, there is no genuine issue of material fact in this case. The trial court properly concluded that "Mrs. Simmons did not possess an enforceable right or interest based upon a *reasonable* expectation (shared by *all* shareholders) that her ownership in the Defendant Corporations would be redeemed at fair [market] value upon her death." Consequently, we affirm the trial court's order granting defendants' motion for summary judgment and denying plaintiff's cross-motion for summary judgment.

Affirmed.

Judges STEELMAN and STEPHENS concur.

---

7. We have discussed the expectation of Mrs. Simmons with regard to defendants collectively; however, we note that plaintiff's argument pertaining to Randolph is even weaker than its arguments pertaining to Acme and Sapona. Randolph did not purchase shares from Mr. Redding's estate or send letters offering to redeem shares.