Coleman v. Coleman, 2015 NCBC 110.

STATE OF NORTH CAROLINA

BUNCOMBE COUNTY

THOMAS W. COLEMAN,

        Plaintiff,

v.

MAUREEN K. COLEMAN, individually, and as Executrix of the Estate of Richard L. Coleman, Jr.; CAROLYN G. W. COLEMAN, individually, and as Executrix of the Estate of Stewart B. Coleman; AMANDA COLEMAN FRANKLIN; WHITNEY COLEMAN ISRAEL; THOMAS M. ISRAEL, III; RICHARD L. COLEMAN, III; KELLY COLEMAN PREWITT,

        Defendants.

v.

ASHEVILLE MALL, INC. and SHERWOOD HEIGHTS, INC.,

        Nominal
Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 3869

ORDER AND OPINION ON
DEFENDANTS' MOTIONS
TO DISMISS

{1} **THIS MATTER** is before the Court upon the separate Motions to Dismiss Plaintiff Thomas W. Coleman's ("Plaintiff") Complaint[1] filed by Defendants Maureen K. Coleman ("Maureen Coleman"), individually, and as Executrix of the Estate of Richard L. Coleman, Jr.; Carolyn G.W. Coleman ("Gay Coleman"), individually, and as Executrix of the Estate of Stewart B. Coleman; Amanda Coleman Franklin ("Amanda Franklin"); Whitney Coleman Israel ("Whitney Israel"); Thomas M. Israel, III ("Thomas Israel"); Richard L. Coleman, III ("Lee Coleman"); and Kelly Coleman Prewitt's ("Kelly Prewitt") (collectively, "Defendants") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil

---

[1] Each Defendant submitted a separate Motion to Dismiss and all Defendants jointly represented by counsel filed joint briefs for purposes of the length limitations on briefs under Business Court Rule 15.8.

Procedure (the "Motions") in the above-captioned case. After considering the Motions, briefs in support of and in opposition to the Motions, and the arguments of counsel, the Court **GRANTS** the Motions and **DISMISSES** Plaintiff's claims.

> *McGuireWoods LLP, by Robert A. Muckenfuss, Jodie N. Hermann, Alexander Covington, and Emily Lowder, for Plaintiff Thomas W. Coleman.*

> *Adams, Hendon, Carson, Crow & Saenger, P.A., by Robert C. Carpenter, E. Thomison Holman, and Joy McIver, for Defendants Kelly C. Prewitt and Richard L. Coleman, III.*

> *FisherBroyles LLP, by Cammi R. Jones, and Mainsail Lawyers, by J. Kellam Warren, for Defendant Maureen Coleman, individually and as Executrix of the Estate of Richard L. Coleman, Jr.*

> *The Van Winkle Law Firm, by Stephen J. Grabenstein and James W. Baley, for Defendants Carolyn G.W. Coleman, individually and as Executrix of the Estate of Stewart B. Coleman, Amanda Coleman Franklin, Whitney Coleman Israel, and Thomas M. Israel, III.*

Bledsoe, Judge.

I.

FACTUAL AND PROCEDURAL BACKGROUND

{2}    The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6), but only recites those facts included in the Complaint that are relevant to the Court's determination of Defendants' Motions to Dismiss. *See, e.g., Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).

{3}    This case arises from a family business relationship gone sour. All parties to this case are related, either through blood or through marriage, and hold present or presumptive future interests in the Nominal Defendants, Asheville Mall, Inc. and Sherwood Heights, Inc. (collectively, the "Corporations").

{4}    Plaintiff Thomas Coleman is a one-third owner/shareholder and director of the Corporations. (Compl. ¶ 3.) Plaintiff, Richard L. Coleman, Jr., and Stewart B. Coleman were brothers who shared equally in the ownership of the Corporations, which were formed by their parents. Plaintiff is the only surviving brother.

{5}   Maureen Coleman is the widow of Richard L. Coleman, Jr. and serves as Executrix of his Estate.  (Compl. ¶ 4.)  The Estate of Richard L. Coleman, Jr. ("R. Coleman Estate") is a one-third owner/shareholder of the Corporations, and Maureen Coleman serves as a director of the Corporations by virtue of her role as Executrix of the R. Coleman Estate.  (Compl. ¶ 4.)

{6}   Lee Coleman and Kelly Prewitt are beneficiaries of the R. Coleman Estate. (Compl. ¶¶ 9–10.)

{7}   Gay Coleman is the widow of Stewart B. Coleman and serves as Executrix of his Estate. (Compl. ¶ 5.)  The Estate of Stewart B. Coleman ("S. Coleman Estate") is a one-third owner/shareholder of the Corporations. (Compl. ¶ 5.)

{8}   Amanda Franklin and Whitney Israel are beneficiaries of the S. Coleman Estate.  (Compl. ¶¶ 6–7.)  Thomas Israel is the husband of Whitney Israel and is a director and current President of the Corporations.  (Compl. ¶ 8.)

{9}   Stewart B. Coleman formerly served as President of the Corporations until 2008 when he was removed from office "due to suspected improprieties in management of the Corporations."  (Compl. ¶¶ 12–13.)

{10}   After Stewart B. Coleman's removal, Plaintiff was elected President of the Corporations, a position he held for six years.  (Compl. ¶¶ 14–17.)

{11}   Plaintiff alleges that, when he was voted President, the "intent was for Plaintiff to remain as President so long as he was capable and willing to serve," (Compl. ¶ 14), as "[i]t was always the intent of the founders of the Corporations and of Plaintiff's late brothers that so long as one of the brothers was alive and capable, that a brother would be President of the Corporations." (Compl. ¶ 28.)

{12}   Plaintiff received a Notice of Special Meeting of Shareholders and a Special Meeting of the Board of Directors of the Corporation (the "Notice") on June 27, 2014.  (Compl. ¶ 19.)  The Notice stated that the purpose of the meeting was to "1) remove or accept the resignation of one or more directors; 2) elect one or more directors to fill vacancies created; 3) amend and reinstate the Bylaws of the Corporations; 4) enter into a Management Agreement; and 5) authorize Thomas M.

Israel, III to take any action reasonably necessary to take control of all the accounts owned by the Corporations." (Compl. ¶ 20.)

{13} The meeting was held on July 8, 2014, at which time Plaintiff was removed as President of the Corporations by the R. Coleman Estate, the S. Coleman Estate, Thomas Israel, and Maureen Coleman. (Compl. ¶¶ 21–22.) Thomas Israel was elected President of the Corporations. (Compl. ¶ 26.) Plaintiff alleges that he was removed as President in retaliation for filing a caveat proceeding to challenge the probate of his mother's will in 2010. (Compl. ¶ 25.)

{14} Plaintiff's counsel made written demand on the R. Coleman Estate, the S. Coleman Estate, Thomas Israel, and Maureen Coleman on July 11, 2014, demanding reinstatement as President of the Corporations. (Compl. ¶ 23.)

{15} Counsel for the R. Coleman Estate, the S. Coleman Estate, Thomas Israel, and Maureen Coleman rejected Plaintiff's demand on July 28, 2014.

{16} Plaintiff filed this action on August 29, 2014, alleging five claims against Defendants in various combinations. This case was designated a complex business case on September 5, 2014 and assigned to the undersigned on September 8, 2014.

{17} Defendants' Motions to Dismiss have been fully briefed, and the Court held a hearing on the Motions at which all parties were represented by counsel. The Motions are ripe for resolution.

II.

LEGAL STANDARD

{18} The overarching question for the Court on a motion to dismiss under N.C. R. Civ. P. Rule 12(b)(6) is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987) (citing *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979)). Furthermore, "[t]he complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Block v. Cnty. of*

*Person*, 141 N.C. App. 273, 277–78, 540 S.E.2d 415, 419 (2000) (citation omitted). Factual allegations must be accepted as true; however, bare legal conclusions "are not entitled to a presumption of truth." *Miller v. Rose*, 138 N.C. App. 582, 592, 532 S.E.2d 228, 235 (2000) (citations omitted). Dismissal is appropriate in any of the three following instances: "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Wood v. Guilford Cnty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (citation omitted).

III.

ANALYSIS

A. *Meiselman* Claim

{19} In his first claim for relief entitled "Breach of Fiduciary Duty – *Meiselman* Action," Plaintiff requests equitable relief and reinstatement as President of the Corporations based on Defendants' frustration of his reasonable expectations as delineated in *Meiselman v. Meiselman*, 309 N.C. 279, 298, 307 S.E.2d 551, 562 (1983). (Compl. ¶¶ 31–38.) To obtain relief under *Meiselman's* reasonable expectation analysis, Plaintiff must allege that:

> (1) he had one or more substantial reasonable expectations known or assumed by the other participants; (2) the expectation has been frustrated; (3) the frustration was without fault of plaintiff and was in large part beyond his control; and (4) under all of the circumstances of the case plaintiff is entitled to some form of equitable relief.

*Brady v. Van Vlaanderen*, 2013 NCBC LEXIS 34, at *10 (N.C. Super. Ct. July 24, 2013) (quoting *High Point Bank & Trust Co. v. Sapona Mfg. Co.*, 212 N.C. App. 148, 152, 713 S.E.2d 12, 15 (2011)).

{20} As an initial matter, Defendants argue that Plaintiff has not adequately pleaded his *Meiselman* action because Plaintiff seeks relief not available under *Meiselman*. (Gay Coleman Br. Supp. Mot. Dismiss 5.) In his response brief and at the hearing, Plaintiff suggested and argued for the first time that his first claim for relief is not simply premised on *Meiselman*, but is for equitable relief and damages

for breach of fiduciary duty, similar to the claims asserted in *Freese v. Smith*, 110 N.C. App. 28, 428 S.E.2d 841 (1993), and *Farndale Co., LLC v. Gibellini*, 176 N.C. App. 60, 628 S.E.2d 15 (2006).[2]  (Pl.'s Resp. to Gay Coleman Mot. Dismiss 10.)  The Court finds Plaintiff's argument unpersuasive.

{21}  First, the Court does not believe a fair reading of the Complaint, as pleaded, puts Defendants on fair notice of Plaintiff's intention to state an individual breach of fiduciary duty claim apart from the *Meiselman* line of cases.  Every fact supporting Plaintiff's first claim for relief focuses on the elements necessary to state a *Meiselman* claim and concludes with a request for "equitable relief and reinstatement as President of the Corporations."  (Compl. ¶ 38.)  Although Plaintiff alleges that he is entitled to damages in his prayer for relief, that sole allegation is insufficient, when read in conjunction with the rest of the Complaint, to put Defendants on notice.  *See, e.g.*, *Allen v. Land Res. Group of N.C., LLC*, 2010 NCBC LEXIS 18, *9 (N.C. Super. Ct. Sep. 22, 2010) ("Rule 8 calls for simple, concise and direct pleadings which are sufficiently particular to give the court and each defendant fair notice of what claims the plaintiff is asserting against each of the defendants and the grounds upon which the claims rest."); *see also, e.g.*, *Brad Ragan, Inc. v. Callicutt Enterprises, Inc.*, 73 N.C. App. 134, 136, 326 S.E.2d 62, 64 (1985) (stating that a complaint must give defendant "fair notice of the claim against him and the ground upon which it rests.").

{22}  The Court, therefore, concludes that Plaintiff's first claim for relief, entitled "Breach of Fiduciary Duty – *Meiselman* Action," was pleaded under the

---

[2] The principal difference between the *Meiselman* and the *Freese* line of cases is in the requested relief.  In *Meiselman*, the plaintiff minority shareholder, alleging that the majority shareholder breached his fiduciary duty, exercised his statutory right to seek judicial dissolution and other equitable relief under N.C. Gen. Stat. §§ 55-125 and 55-125.1 (1973) (current version at N.C. Gen. Stat. § 55-14-30 (2015)).  *Meiselman*, 309 N.C. at 298, 307 S.E.2d at 562.  While *Freese* and *Farndale* also involve breach of fiduciary duty claims, the plaintiffs in those cases sought monetary damages rather than equitable relief.  *Freese*, 110 N.C. App. at 37–38, 428 S.E.2d at 847–48 (holding that a minority shareholder could recover damages from majority shareholders for breach of fiduciary duty when the minority alleged that the majority used corporate assets to make preferential payments to themselves); *Farndale*, 176 N.C. App. at 68–69, 628 S.E.2d at 20 (affirming a jury award of damages to the minority shareholders who alleged that defendant majority shareholders orchestrated a stock issuance in order to squeeze plaintiffs out of the company).

*Meiselman* line of cases and, as such, is insufficient to state a claim for relief for two reasons. First, Plaintiff has not pleaded sufficient facts to show his expectations were reasonable or concurred in by Defendants. Plaintiff has advanced only conclusory allegations that Defendants knew of and frustrated his substantial and reasonable expectation of continuing to serve as President of the Corporations. (Compl. ¶¶ 31–37.) Plaintiff has failed to allege any facts that might give Defendants notice of the "transactions, occurrences, or series of transactions or occurrences" showing that Plaintiff possessed reasonable expectations known to Defendants. N.C. R. Civ. P. 8(a)(1). *See also Royals v. Piedmont Elec. Repair Co.*, 137 N.C. App. 700, 706, 529 S.E.2d 515, 519 (2000) (citation omitted) (stating that reasonable expectations may be gleaned from the parties' actions, signed agreements, and other written instruments); *see generally* Russell M. Robinson, II, *Robinson on North Carolina Corporation Law*, § 28.11(2) (7th ed. 2014) (discussing "reasonable expectations" under *Meiselman*).

{23} Next, Plaintiff has sought relief in the form of "equitable relief including reinstatement as President" of the Companies, relief not available under the *Meiselman* cases. Under former Section 55-125.1, the trial court could order relief such as

> (1) [c]anceling or altering any provision contained in the charter or bylaws of the corporation; or (2) [c]anceling, altering, or enjoining any resolution or other act of the corporation; or (3) [d]irecting or prohibiting any act of the corporation or of shareholders, directors, officers or other persons party to the action; or (4) [p]roviding for the purchase at their fair value of shares of any shareholder, either by the corporation or by other shareholders, such fair value to be determined in accordance with such procedures as the court may provide.

*Meiselman*, 309 N.C. at 300, 307 S.E.2d at 563–64 (quoting N.C. Gen. Stat. § 55-125.1 (1973)).

{24} "A significant difference exists between the statutory framework in which North Carolina courts analyzed *Meiselman* and the framework in existence today." *High Point Bank & Trust Co. v. Sapona Mfg. Co.*, 2010 NCBC LEXIS 14, *16–17 (N.C. Super. Ct. June 22, 2010), *aff'd*, 212 N.C. App. 148, 713 S.E.2d 12 (2011).

"Section 55-14-30(2) of the North Carolina General Statutes provides that a 'superior court *may dissolve a corporation* . . . [i]n a proceeding by a shareholder if it is established that . . . liquidation is reasonably necessary for the protection of the rights or interests of the complaining shareholder.'" *Id.* at \*13 (emphasis added). Once the Court orders dissolution, N.C. Gen. Stat. § 55-14-31(d) enables the defendant corporation to avoid dissolution by purchasing the shares of the complaining shareholder at their fair value. *Id.* at \*14–15. *See also Royals*, 137 N.C. App. at 709, 529 S.E.2d at 521 (applying *Meiselman* under the current statute). Thus, under current law, courts are limited in the exercise of their "discretionary equitable jurisdiction to order involuntary dissolution, or, alternatively, a mandatory buyout for the protection of the minority shareholders in closely held corporations." Robinson, *supra*, § 28.11; *see also id.* §28.12 (discussing mandatory buyout as an alternative to involuntary dissolution).

{25} For these reasons, Plaintiff's first claim for relief should be dismissed. Plaintiff's counsel indicated at the hearing that Plaintiff is able to allege sufficient facts to state a claim for relief under the *Meiselman* line, the *Freese* line, or both, and argued that Plaintiff should be granted leave to amend should the Court conclude that dismissal is proper based on the current allegations. Based on its review, the Court finds good cause to grant Plaintiff leave to amend his Complaint to re-allege his first claim for relief in a manner consistent with Rule 8's requirements and prevailing case law. Although Defendants argue that any amendment at this stage of the litigation will work to prejudice Defendants, the Court concludes in these circumstances that it will not work a substantial injustice on Defendants for Plaintiff to refile his first claim for relief. The Court's ruling shall be without prejudice to Defendants' right to move to dismiss any such amended claim.

B. Breach of Fiduciary Duty (Derivative)

{26} Plaintiff alleges a derivative claim for breach of fiduciary duty distinct from his *Meiselman* claim. In seeking dismissal, Defendants first argue that Plaintiff has not satisfied the demand requirement of North Carolina's Business

Corporation Act, which provides that no shareholder can file a derivative suit prior to the expiration of ninety days after making written demand on the corporation to take suitable action. N.C. Gen. Stat. § 55-7-42 (2015). The ninety day period is waived if the corporation rejects the demand prior to the expiration of the ninety days or if irreparable injury would result to the corporation by waiting. *Id.* "Under the plain language of the statute, the demand requirement is a condition precedent to the institution of any and all derivative actions." *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 410, 537 S.E.2d 248, 262 (2000). While strict compliance may accomplish little in a close corporation setting, "the Legislature did not create a 'close corporation exception' to the statutory demand requirement." *Id.*; *see also* Robinson, *supra*, § 17.03(2) ("The Act now requires a prior demand on a North Carolina corporation to be made in all cases, without any exception[.]").

{27} The Complaint reflects that Plaintiff sent a letter on July 11, 2014, to counsel for the other directors and shareholders requesting that they reinstate him as President of the Corporations. (Compl. Ex. A.) The Complaint also alleges that "counsel for the Majority Shareholders and Majority Directors" rejected Plaintiff's demand by voicemail on July 28, 2014. (Compl. ¶ 24.) Plaintiff filed the Complaint on August 26, 2014, less than ninety days after making demand, alleging the derivative claim for breach of fiduciary duty. Arguing that "a voicemail from counsel for one director and one shareholder rejecting the Plaintiff's demand . . . is not the equivalent of rejection by the [C]orporations," Defendants contend that Plaintiff was therefore required to wait the full ninety days before bringing his derivative claim.[3]

{28} The North Carolina Court of Appeals has previously evaluated the sufficiency of a corporate rejection. *See Allen v. Ferrera*, 141 N.C. App. 284, 540 S.E.2d 761 (2000). In *Allen,* the plaintiff was a fifty percent shareholder in the

[3] Defendants' briefs indicate that only counsel for Gay Coleman and Tom Israel left Plaintiff a voicemail rejecting his demand, (Gay Coleman Br. Supp. Mot. Dismiss 7,) while the Complaint alleges the rejection was made by counsel for the "Majority Shareholders and Majority Directors." (Compl. ¶ 24.) In accordance with the standard of review on a motion to dismiss, the Court treats the Complaint's allegations as true and assumes for the purposes of deciding the Motions that the rejection was made by counsel for all majority shareholders and directors.

subject corporation ("Subject Corporation"), and the other fifty percent shareholder was another corporation ("Shareholder Corporation") owned by two individuals. *Id.* at 286, 540 S.E.2d at 763. The plaintiff and the two individuals all served as directors of the Subject Corporation, and one of the individuals also served as president of the Shareholder Corporation. *Id.* Prior to bringing a derivative suit against the Subject Corporation, the plaintiff sent a demand letter to the individuals and the Shareholder Corporation. *Id.* at 286, 540 S.E.2d at 764. Nine days later, the plaintiff received a rejection letter signed by the individuals in their individual capacities, one of whom also signed in his capacity as president of the Shareholder Corporation. *Id.* The Court ultimately concluded that this was not a "rejection *by the corporation*" under agency principles because the plaintiff did not allege that the individuals and the Shareholder Corporation had authority to bind the Subject Corporation through their individual signatures. *Id.* at 289, 540 S.E.2d at 765 (emphasis in original). This Court (Gale, J.) has since interpreted *Allen* as standing for the proposition that, for derivative actions governed by Section 55-7-42, "any response adequate to constitute a corporate rejection that excuses the further running of the ninety day waiting period must be made by those with the authority to act on behalf of the corporation." *Petty v. Morris*, 2014 NCBC LEXIS 67, at *17 (N.C. Super. Ct. Dec. 16, 2014.)

{29} Seeking to distinguish this case from the holding in *Allen*, Plaintiff argues that "a rejection from the attorneys of the necessary parties on behalf of those parties is sufficient to bind them," citing *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 534 S.E.2d 653 (2000) (discussing agency principles in attorney-client relationships). (Pl.'s Resp. to Gay Coleman Mot. Dismiss 14.) That argument, however, misunderstands *Allen* by equating authority to bind the individual directors and shareholders with authority to bind the corporation. Plaintiff has not alleged that counsel who left him the voicemail had authority to bind the Corporations, and so the Court concludes that Plaintiff has failed to allege a rejection by the Corporations sufficient to excuse the running of the ninety day

waiting period in Section 55-7-42.[4]  Therefore, Plaintiff's derivative claim for breach of fiduciary duty should be dismissed.  *Allen*, 141 N.C. App. at 289, 540 S.E.2d at 765 (affirming dismissal at 12(b)(6) stage for failure to comply with the demand requirement).

{30}  Defendants also argue that Plaintiff's derivative claim must be dismissed because it is contained in an unverified Complaint.  All complaints initiating shareholder derivative suits must be verified by oath.  N.C. R. Civ. P. 23(b).  Because Plaintiff has not verified his Complaint, Plaintiff's derivative claim for breach of fiduciary duty must be dismissed, but without prejudice to his right to cure the defect.  *See Peak Coastal Ventures, L.L.P. v. SunTrust Bank*, 2011 NCBC LEXIS 13, at *23–24 (N.C. Super. Ct. May 5, 2011) (dismissing in part for failure to verify the complaint).  *See also Alford v. Shaw*, 327 N.C. 526, 531, 398 S.E.2d 445, 447 (1990) (holding that failure to comply with Rule 23(b) is a procedural defect that may be cured by amendment to the pleadings).

{31}  Further, the Court finds Plaintiff has not pleaded sufficient facts to withstand the effects of the business judgment rule.  The business judgment rule provides an initial evidentiary presumption that a director acted with due care and in the corporation's best interest, and, absent rebuttal of the evidentiary presumption, a strong substantive presumption that the director's judgment will not be judicially second-guessed unless it cannot be attributed to a rational business purpose.  *Winters v. First Union Corp.*, 2001 NCBC LEXIS 5, at *9–10 (N.C. Super. Ct. July 12, 2001) (quoting *State ex rel. Long v. ILA Corp.*, 132 N.C. App. 587, 602,

---

[4] Plaintiff also cites *Norman*, 140 N.C. App. at 411–12, 537 S.E.2d at 263, to argue that, under N.C. R. Civ. P. 9(c), a plaintiff can satisfy the demand requirement and survive a 12(b)(6) motion by simply alleging compliance with all conditions precedent.  (Pl.'s Resp. to Gay Coleman Mot. Dismiss 13.)  The Court of Appeals reached that conclusion, however, as a matter of distinguishing Section 55-7-42 from its predecessor statute, N.C. Gen. Stat. § 55-7-40 (1994), which required a plaintiff to plead his efforts to make demand "with particularity."  *Norman*, 140 N.C. App. at 411, 537 S.E.2d at 262.  Moreover, *Allen* is the later-decided case and relies on *Norman* in affirming the trial court's 12(b)(6) dismissal for failure to satisfy the substantive requirements of Section 55-7-42.  *Allen*, 141 N.C. App. at 288–89, 540 S.E.2d at 765.  *See also Greene v. Shoemaker*, 1998 NCBC LEXIS 4, ¶*18–19 (N.C. Super. Ct. Sept. 24, 1998) ("In determining whether the demand requirement has been met the Court must compare the derivative claims asserted in a complaint against the specific demands a plaintiff has made prior to filing suit.").

513 S.E.2d 812, 821–22 (1999)). In order to defeat this presumption and survive a motion to dismiss, Plaintiff must allege in other than conclusory terms that the board was "inattentive or uninformed, acted in bad faith, or that the board's decision was unreasonable." *Id.* at *10.

{32} Plaintiff alleges that Defendants replaced him as President with a person who "does not have the requisite expertise or experience to properly manage the Corporations." (Compl. ¶ 43.) This conclusory statement, standing alone, is insufficient to demonstrate that the board's actions were outside the realm of the business judgment rule. *See, e.g., Technik v. WinWholesale, Inc.*, 2012 NCBC LEXIS 5, at *14–16 (N.C. Super. Ct. Jan. 13, 2012) (holding that summary statements that the board mismanaged the president's termination and replacement described nothing more than routine conduct of directors engaged in decision making). Therefore, Plaintiff's derivative claim for breach of fiduciary duty must be dismissed.

{33} Based on Plaintiff's assertions of additional facts at the hearing, the Court finds that Plaintiff may be able to plead additional facts that would suggest that Defendants' actions ran afoul of the business judgment rule as well as take action to satisfy the demand and verification requirements for derivative actions. As such, the Court dismisses Plaintiff's derivative claim for breach of fiduciary duty without prejudice and grants Plaintiff leave to amend his Complaint.

C. Unfair and Deceptive Trade Practices

{34} Plaintiff's Unfair and Deceptive Trade Practices ("UDTP") claim must fail because Plaintiff has (1) not alleged unfair or deceptive acts or practices on the part of the non-shareholder and non-director Defendants and (2) not alleged facts that show the shareholders' and directors' actions in removing him as President of the Corporations were in or affecting commerce. To state a UDTP claim under N.C. Gen. Stat. § 75-1.1, Plaintiff must allege (1) that Defendants committed unfair or deceptive acts or practices, (2) that such acts were in or affected commerce, and (3) injury. "[T]he General Assembly did not intend for the [UDTP] Act's protections to extend to a business's internal operations." *White v. Thompson*, 364 N.C. 47, 53,

691 S.E.2d 676, 680 (2010). Rather, the UDTP Act was intended to apply to interactions between market participants, and any conduct that occurs solely within a single business cannot therefore fall within the Act. *Id.*

{35} The UDTP claim rests on Plaintiff's allegation that "Defendants' breach of fiduciary duties, as described in the first and second claims for relief, constitute unfair and deceptive acts under N.C.G.S. § 75-1.1." (Compl. ¶ 54.) The first two claims for relief, however, were only brought against the other shareholders and directors. The Complaint does not identify other unfair or deceptive conduct on the part of Defendants who were neither shareholders nor directors—Kelly Prewitt, Lee Coleman, Whitney Israel, Amanda Franklin, and Gay Coleman in her individual capacity.

{36} In arguing to preserve his claim against these Defendants, Plaintiff cites *Norman*, 140 N.C. App. at 417, 537 at 266, in which the Court of Appeals upheld a UDTP claim against interrelated corporate and individual defendants in a family-owned close corporation. In that case, however, all of the individual defendants were shareholders, against whom the plaintiff had pleaded a valid breach of fiduciary duty claim. *Id.* The plaintiff had alleged specific acts of unfair competition as to the corporate defendants who were neither shareholders nor directors of the family company. *Id.* Thus, *Norman* still requires that Plaintiff allege unfair or deceptive acts, which he has failed to do with respect to the non-shareholder and non-director Defendants.

{37} To argue that his removal by the Corporation's shareholders and directors was "in or affecting commerce," Plaintiff cites *Woolard v. Davenport*, 166 N.C. App. 129, 601 S.E.2d 319 (2004), in which the court upheld a minority shareholder's UDTP claim against majority shareholders on the basis of alleged breaches of fiduciary duty. (Pl.'s Resp. to Maureen Coleman Mot. Dismiss 16.) *Woolard*, however, more clearly involved a commercial element because it arose out of an asset sale through which the plaintiff became a shareholder. *Woolard*, 166 N.C. App. at 130, 601 S.E.2d at 320. Here, the facts as pleaded do not take the conduct out of the realm of an internal corporate dispute. *See Wilson v. Blue Ridge Elec.*

*Membership. Corp.*, 157 N.C. App. 355, 358, 578 S.E.2d 692, 694 (2003) (holding that the selection of and qualification of directors does not affect commerce under the UDTP Act). Accordingly, Plaintiff's UDTP claim must be dismissed. However, again, based on Plaintiff's representations at the hearing, the Court finds that Plaintiff is aware of facts that may suggest certain Defendants engaged in acts in or affecting commerce, and as such, the Court's dismissal of Plaintiff's UDTP claim is without prejudice.

D. Civil Conspiracy

{38} To state a claim for civil conspiracy, a plaintiff must allege (1) a conspiracy, (2) wrongful acts by the alleged conspirators in furtherance of the conspiracy, and (3) resulting injury. *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 444, 666 S.E.2d 107, 115 (2008). North Carolina does not recognize a separate civil action for civil conspiracy. *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005). Rather, civil conspiracy is premised on the underlying wrongful acts. *Id.* A civil conspiracy is essentially an action for damages, and no action lies unless one or more conspirators actually cause damage. *See Bradshaw v. Maiden*, 2015 NCBC LEXIS 80, at *46 (N.C. Super. Ct. Aug. 10, 2015) (citing *Henderson v. LeBauer*, 101 N.C. App. 255, 260, 399 S.E.2d 142, 145 (1991)).

{39} In this case, Plaintiff has presented a mere conclusory allegation that Defendants "agreed to engage in a conspiracy to commit the wrongful act of removing Plaintiff as president[.]" (Compl. ¶ 50.) Moreover, the Court has dismissed the underlying claims relied upon by Plaintiff to support his civil conspiracy claim. As such, Plaintiff's claim for civil conspiracy should be dismissed as against all Defendants. Nonetheless, the Court determines that Plaintiff should be given the opportunity to re-allege his claim in a manner sufficient under Rule 8. Therefore, the Court dismisses Plaintiff's civil conspiracy claim without prejudice. The Court has serious concerns about the viability of this claim against the non-director, individual Defendants in particular and admonishes Plaintiff that he must plead the specific facts to support his claim against them.

E. <u>Temporary Restraining Order</u>

{40} Plaintiff has pleaded a separate cause of action asserting that he is entitled to a temporary restraining order ("TRO") against all Defendants to prevent immediate, irreparable harm to the Corporations. Plaintiff, however, has not filed a motion for entry of a TRO at any time. A TRO is a "drastic" procedure that "operates within an emergency context which recognizes the need for swift action . . . ." *State ex rel. Gilchrist v. Hurley*, 48 N.C. App. 433, 448, 269 S.E.2d 646, 655 (1980). A court may, in its discretion, issue a TRO if "it clearly appears from specific facts shown by affidavit or by verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition . . . ." N.C. R. Civ. P. 65(b). In light of Plaintiff's failure to pursue a TRO at any time since the filing of the Complaint in August 2014, the Court deems Plaintiff's purported cause of action for TRO effectively waived by Plaintiff and dismisses this claim with prejudice.[5] The Court's ruling shall be without prejudice, however, to Plaintiff's right to move for a TRO based on evidence developed after the Court's ruling.

IV.

CONCLUSION

{41} Based on the foregoing, the Court **GRANTS** Defendants' Motions to Dismiss.

{42} Plaintiff's claims for breach of fiduciary duty – *Meiselman* action, breach of fiduciary duty, unfair and deceptive trade practices, and civil conspiracy are hereby **DISMISSED** without prejudice.

{43} Plaintiff's purported claim for temporary restraining order is hereby **DISMISSED** with prejudice.

---

[5] Although pleaded as a claim for relief, the Court notes that a TRO is not a stand-alone cause of action and instead is an ancillary legal remedy. *See Hutchins v. Stanton*, 23 N.C. App. 467, 469, 209 S.E.2d 348, 349 (1974) ("[A TRO]" is only an ancillary remedy for the purpose of preserving the status quo or restoring a status wrongfully disturbed pending the final determination of the action. . . . It is not a cause of action or a lawsuit in and of itself.") (internal citation omitted); *Register v. Griffin*, 6 N.C. App. 572, 575, 170 S.E.2d 520, 523 (1969) ("The primary purpose of a [TRO] is usually to meet an emergency when it appears that any delay would materially affect the rights of a plaintiff.").

**SO ORDERED**, this the 10th day of December, 2015.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
  for Complex Business Cases